PATRICIA LONG, Plaintiff-Appellant, v. TAZEWELL/PEKIN CONSOLIDATED COMMUNICATION CENTER *et al.*, Defendant-Appellees.

Third District   No. 3—90—0471

Opinion filed June 4, 1991.

Patricia M. Parker, of Reynolds, Murphy & Associates, P.C., of Peoria (G. Edward Murphy, of counsel), for appellant.

Eric I. Blanc, State's Attorney, of Pekin (Stewart J. Umholtz, Assistant State's Attorney, of counsel), for appellees City of Pekin, County of Tazewell, James R. Donahue, Everett M. Volle, Donald Benassi, and Larry Homerin.

Burt L. Dancey, of Elliff, Keyser, Oberle & Davies, P.C., of Pekin, for appellee City of Pekin.

JUSTICE SLATER delivered the opinion of the court:

The communications director of the Tazewell/Pekin Consolidated Communications Center (T/PCCC) terminated plaintiff's employment as a telecommunications operator/police dispatcher. Plaintiff filed suit against the defendants alleging that the T/PCCC rules and regulations manual established a contractual relationship between the plaintiff and T/PCCC which was breached by the defendants. Defendants filed a motion to dismiss (Ill. Rev. Stat. 1989, ch. 110, par. 2—615) claiming that plaintiff was an employee at will and that the manual had a disclaimer which applied to the plaintiff's situation. The trial court granted defendants' motion, and the plaintiff appeals. We reverse.

Plaintiff was hired as a probationary employee in January of 1979. As part of her training, she was provided and required to read a handbook entitled "Rules and Regulations Manual." After six months, she was awarded full-time employee status.

On September 7, 1988, plaintiff received a memorandum letter from the communications director about complaints he had received regarding her job performance. Plaintiff was suspended for two days commencing Saturday, September 10, 1988. She was further directed to report to the director's office on September 14, 1988, for a full discussion of the complaints. Prior to that meeting, however, the director sent to the plaintiff a written memorandum dated September 13, 1988, outlining five complaints about her job performance. On the

same date, he sent another letter terminating her employment effective immediately.

Plaintiff was allowed to appeal her decision to the T/PCCC board of directors. A hearing was held on October 21, 1988. By letter dated October 24, 1988, the board, which was comprised of the individually named defendants, found that the decision to terminate plaintiff's employment was justified.

Plaintiff subsequently filed a multicount complaint against defendants alleging that the rules and regulations manual (manual) created a binding contract and that she was terminated in violation of her contractual rights as set forth in that manual.

Defendants' motion to dismiss alleged that plaintiff failed to state a cause of action because she was merely an employee at will and had no contractual rights. The trial court found, under the rationale of *Duldulao v. Saint Mary of Nazareth Hospital* (1987), 115 Ill. 2d 482, 505 N.E.2d 314, that the manual created no contractual relationship. The court further stated that even if the language of the manual could be construed to create an employment contract, the disclaimer language contained within the manual clearly negated any intent on the part of T/PCCC to enter into a contract with plaintiff.

■■ ■ Generally, employment relationships of indefinite duration are presumed terminable "at will" by either party without cause unless facts support the existence of a contract. *(Duldulao v. Saint Mary of Nazareth Hospital* (1987), 115 Ill. 2d 482, 505 N.E.2d 314.) Whether a contract exists is a question of law to be determined by the court. (*Habighurst v. Edlong Corp.* (1991), 209 Ill. App. 3d 426, 568 N.E.2d 226; *Bank of Benton v. Cogdill* (1983), 118 Ill. App. 3d 280, 454 N.E.2d 1120.) In *Duldulao*, the court devised a three-prong test for determining whether an employee handbook creates enforceable contractual rights:

> "First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. When these conditions are present, then the employee's continued work constitutes consideration for the promises contained in the statement, and under traditional principles a valid contract is formed." *Duldulao*, 115 Ill. 2d at 490, 505 N.E.2d at 318.

The primary controversy in this case concerns the first prong of the *Duldulao* test. In *Duldulao*, the handbook contained a statement urging employees to be familiar with its contents as it (the handbook) is "designed to clarify your rights and duties as employees." The handbook also stated that employees were initially on probation for a period of up to 90 days and during that time could be terminated without notice but only for just cause. At the end of the probationary period, the employee, if retained, became permanent. Thereafter termination "cannot occur without proper notice and investigation." The handbook also advised that permanent employees "are never dismissed without prior written admonitions and/or an investigation that has been properly documented." (115 Ill. 2d at 486.) The supreme court additionally noted that the handbook in *Duldulao* contained no disclaimers. Our supreme court concluded by finding that the statements in the employee handbook were such that an employee would reasonably believe that a progressive disciplinary procedure would be required prior to termination. *Duldulao*, 115 Ill. 2d 482, 505 N.E.2d 314.

■ Similarly, we consider the manual in this case to contain promises regarding procedures to be used prior to termination of an employee. The manual provides in section II, article 230, in part, as follows:

> *"DISCIPLINE/RESIGNATION/SEVERANCE*
>
> In order to maintain an effective and professional communication center, a form of discipline must be established and enforced. The following shall be established procedures for disciplinary problems.
>
> 1) An immediate oral reprimand shall be given *** to an employee not operating under professional communication manner or who is violating established procedures or regulations.
>
> 2) A written reprimand shall follow an oral reprimand ***[;]
>
> 3) If a further form of discipline is needed, or if conditions warrant, a term of suspension or a transfer of shifts shall be assigned ***[;]
>
> 4) Dismissal is the last form of employee discipline. Every employee shall have the right of appeal with the T/PCCC Board ***.
>
> In all cases of discipline, a memorandum shall be made up by the *** director, stating the date of the infraction, time, reason for the disciplinary action, and the signature of the *** director ***."

The above language regarding disciplinary procedures is, as in *Duldulao,* phrased in an unequivocal mandatory manner. Here, the complaint alleges that plaintiff was terminated for conduct that occurred over a period of time and that she was not provided with the preliminary reprimands as required by the manual. We also note that defendants have, to an extent, relied upon the provisions of the manual. The director of communications in his letter of termination advised plaintiff of her right to appeal to the board and, in fact, such a hearing was held. It cannot be said that such a time-consuming procedure would be afforded merely as a courtesy to plaintiff if defendants had not believed it was required by the manual.

■ It is not unreasonable that plaintiff would believe the statements contained in the manual constituted an offer regarding disciplinary procedures, thereby satisfying the first prong of the *Duldulao* test. Regarding the last two prongs of the *Duldulao* test, plaintiff has alleged that the manual was provided to her when she was hired and that she was required to become familiar with its contents. She continued to work for T/PCCC after learning of these policy statements, which constitutes acceptance of the offer.

The manual also outlines the duties of various employees, including the position of telecommunicator. Within the description of the duties of telecommunicator is a disclaimer which states "[t]he position of telecommunications operator is a non-civil service position. The employer may discharge the employee at any time."

Courts, since *Duldulao,* have wrestled with whether disclaimers contained within the respective employee handbooks are sufficient to negate the promises made. Decisions both ways have been rendered. For example, in *Robinson v. Christopher Greater Rural Health Planning Corp.* (1991), 207 Ill. App. 3d 1030, 1036, 566 N.E.2d 768, the court determined that a general disclaimer in the manual negated any promises. There, the disclaimer stated that defendant "assumes no contractual liability to any employee via the job description or this publication" (emphasis omitted). In *Habighurst v. Edlong Corp.* (1991), 209 Ill. App. 3d 426, 568 N.E.2d 226, the court determined that a disclaimer prominently placed on the final page of the handbook which was signed, detached and understood by plaintiff negated any statements made in the handbook.

By contrast, in *Perman v. ArcVentures, Inc.* (1990), 196 Ill. App. 3d 758, 554 N.E.2d 982, the court determined that an employee manual containing clearly stated policies in mandatory terms created an enforceable contractual relationship despite disclaimer language within the handbook. The disclaimer analyzed in *Perman* was not,

however, set off from the rest of the text, printed in capital letters or titled. The court therefore held that the manual contained unequivocal language regarding grievance procedures prior to the discharge of an employee and thereby created a contractual relationship.

With regard to the disclaimer contained within the manual in this case, we find *Perman* analogous. Here, as in *Perman*, the disclaimer was not distinctly set out separate and apart. The disclaimer was in effect hidden within the text describing the duties of the telecommunicator. The disclaiming language is not unequivocal in that it merely states that a telecommunicator is not a civil service employee who is granted by law certain procedural safeguards. The disclaimer also does not specifically state that T/PCCC would not be bound by the provisions of the manual as it applied to plaintiff. Any ambiguities in language contained within the manual must be construed against the drafter of the language. *Wheiland Tool & Manufacturing Co. v. Whitney* (1969), 44 Ill. 2d 105, 251 N.E.2d 242.

Finally, defendants argue that plaintiff was afforded all of the procedural safeguards to which she is entitled in that she was given her appeal hearing before the board. This argument is premature as nothing other than the plaintiff's allegations are in the record to support the board's decision to terminate plaintiff. We decline to rule as a matter of law that defendants' decision to terminate plaintiff was justified without evidentiary support in the record.

In summary, we find that the manual creates a contractual relationship between plaintiff and T/PCCC which is not negated by the disclaimer. The decision of the trial court granting defendants' motion to dismiss is therefore reversed, and this cause is remanded for further hearing.

Reversed and remanded.

STOUDER, P.J., and HAASE, J., concur.