ERIC WILLIAMS, Plaintiff-Appellant, v. CHICAGO HOUSING AUTHOR-ITY *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—90—0985

Opinion filed July 18, 1991.

John Thomas Moran, Jr., of Chicago, for appellant.

Louis Butler, of Chicago, for appellees.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Eric Williams, filed suit against the Chicago Housing Authority, Zirl Smith, and Renault Robinson (CHA), alleging that he was wrongfully discharged from employment at the CHA. He claims that the CHA failed to follow its own written policies regarding the discipline of employees and thereby breached an implied contract of employment between the parties. He seeks reinstatement, back pay, interest, and damages.

The trial court dismissed Williams' complaint, holding that it failed to state a cause of action. On appeal, Williams argues that the court applied the wrong standard of review and that his complaint states a cause of action for breach of employment contract.

We affirm.

BACKGROUND

Williams' third amended complaint alleges that Williams had been employed by the CHA since 1961. His last performance evaluation before his discharge was favorable. In March 1985 Williams was an "acting maintenance supervisor" at the Robert Taylor Homes. He was notified in writing, on March 4, 1985, that he was being suspended pending termination. According to Williams, the reasons the CHA

gave in the written notice were either "false, unrelated to Plaintiff, or trivial."

On April 2, 1985, the CHA provided Williams with a termination hearing. The hearing officer found from the matters presented that the termination should be upheld. Thereafter, Williams met with Zirl Smith, executive director of the CHA, to appeal the hearing officer's findings. Smith affirmed the decision in writing, and Williams filed suit in the circuit court of Cook County.

Williams alleges that the CHA's written policies and procedures require it to provide employees in Williams' situation "progressive disciplinary action" for "minor" violations. Under the written policy circulars in issue, progressive discipline means that the employee is first given warnings and counseling in order to correct "poor performance, disruptive or unprofessional behavior or violation of policy or procedure."

The CHA also has a written procedure for "gross" violations, which are those deemed to be "of a serious nature or detrimental to the good order and efficiency of the CHA" so as to warrant immediate suspension pending investigation. The CHA determined that Williams' conduct fell into this category, and terminated him from employment without the progressive discipline approach.

Williams argues on appeal that the CHA was required to follow the progressive discipline procedures because the CHA gave notice of these written policies to its employees and this gave rise to enforceable contractual rights. Williams also alleges that his discharge was not for "just cause" and that the hearing officer's findings were not supported by the evidence.

OPINION

In his brief, Williams frames two issues: (1) whether his complaint adequately sets forth a cause of action for breach of implied contract of employment; and (2) whether the trial court erroneously treated the CHA's motion to dismiss as if it were one for summary judgment.

I

In attempting to state a cause of action against the CHA, Williams relies on *Duldulao v. St. Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314, the first Illinois Supreme Court case to address the contractual rights of otherwise "at will" employees who assert breach of contract claims based on the existence of employee handbooks or manuals. *Duldulao* held that "an employee handbook or other policy statement creates enforceable con-

tractual rights if the traditional requirements for contract formation are present," meaning the acceptance of an offer supported by consideration. (115 Ill. 2d at 490, 505 N.E.2d at 318.) The court held:

> "[T]he policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement." (115 Ill. 2d at 490, 505 N.E.2d at 318.)

The court concluded that when those three elements are present, the employee's continued work constitutes the legal consideration for the promises in the handbook or policy statement.

In *Duldulao*, the employee handbook contained unequivocal, mandatory language granting employees "permanent" employee status after completing a 90-day probationary period. The handbook stated that termination of permanent employees "cannot occur" without proper notice and investigation and that such employees "are never" dismissed without prior written admonitions and documented investigation. The handbook also stated that three warnings within a 12-month period "are required" before an employee is dismissed, "except in the case of immediate dismissal." (115 Ill. 2d at 491, 505 N.E.2d at 318.) Immediate dismissal was permitted for "grave and valid" reasons such as mistreatment of patients or possession of weapons. These grounds were specifically listed, along with types of offenses that were not subject to immediate dismissal. The latter group included "Unwillingness to Render Satisfactory Service" and "Deliberate Violation of Instructions." The plaintiff in *Duldulao* had been terminated for "failure to follow instructions" and "[u]nsatisfactory performance [for] failure to properly monitor the Legal Implications of Documentation seminar." (115 Ill. 2d at 485, 505 N.E.2d at 316.) The supreme court held that the plaintiff would reasonably believe that she would not be terminated for such conduct without prior written warnings. By the very terms of the handbook, her conduct did not fall into the category of grave offenses. The court therefore reversed, concluding that summary judgment in favor of the plaintiff must be entered on her complaint for breach of contract.

■ *Duldulao* recognized that freedom of contract in private employment relationships should not be abridged by the general rule that an employment relationship without a fixed duration may be terminated at the will of either party. (115 Ill. 2d at 489, 505 N.E.2d at

317-18.) Such a terminable-at-will employment relationship is presumed, however, unless a contrary intent is sufficiently established. If a court determines that the parties intended to bestow the employee with the right to be terminated only for just cause or only after a hearing on the grounds for discharge, the court will enforce the contract.

In the pending case, the trial court summarized the allegations of the complaint and attached exhibits, emphasizing the undisputed fact that the CHA follows two "channels" for employee termination. One is for gross violations, which triggers an immediate suspension followed by a hearing. The second, designed for less serious violations, provides for a series of warnings and counseling that may or may not ultimately lead to termination. The trial court found that the CHA treated Williams' conduct as one involving gross violations. The court declined to review the propriety of the CHA's internal decision to terminate Williams under the gross-violation procedures.

Without explaining why, Williams presumes error in the CHA's decision to treat his conduct as a "gross violation" rather than a minor one, a decision that precluded him from receiving the progressive disciplinary procedures. He does not assert that the CHA did not follow its own procedures dealing with immediate suspension pending investigation. He did receive a hearing and administrative review of the termination decision. Williams does not dispute that the CHA has two different channels for disciplining or terminating employees, he simply disagrees with the channel that the CHA chose.

The trial court believed, and we agree, that nothing in the CHA's written policies and procedures mandates the progressive discipline approach in every case. The record contains two statements or circulars related to employee discipline or termination, and the procedures for termination hearings. One of these is undated. It sets out the steps for supervisors to follow when disciplining employees for minor violations of policy and also sets out the steps to be followed in cases of gross violations. The existence of two, separate disciplinary procedures in the same policy statement necessarily gives an employee notice that he or she is not automatically entitled to progressive discipline, as a prerequisite to termination.

The other CHA policy statement, dated July 22, 1983, reinforces the discretionary authority of supervisors to evaluate employee conduct and (1) to attempt to correct problems through warnings and counseling; (2) to request other, unspecified "disciplinary action" in cases of minor violations, when the supervisor deems it necessary;

and finally (3) to immediately suspend an employee for gross violations, pending an investigation by a different supervisor.

The CHA's right to immediately suspend an employee without pay pending investigation in cases of gross violations of CHA policy is expressly set out in both of the policy circulars. The employer's supervisor is authorized to make the preliminary determination that an employee's conduct is so "serious *** or detrimental to the good order and efficiency of the CHA" that "in the supervisor's judgment immediate disciplinary action must be taken to maintain a proper work environment or protect the interest of the CHA, its employees and/or residents." In such situations, the supervisor must advise the employee of his suspension, give written notice that must be acknowledged by the employee, and initiate the review procedures. The department head is responsible for the "impartial and thorough investigation" of the events leading to suspension. The suspending supervisor is expressly precluded from heading the investigation. The employee is given the benefit of a hearing to refute the charges and, thereafter, the department head issues a report that includes the recommended result of the action.

In the pending case, Williams was given a hearing in which he could defend against the charges. He also appealed the hearing officer's recommendation to executive director Zirl for further review. Our own review of the appellate record discloses no indication that Williams was denied procedural due process under the gross-violation policy, or that his termination was effected in bad faith or for illegal reasons. As we have also found, Williams has not set forth an entitlement to the progressive discipline approach as a matter of contract law. He has failed to establish that the CHA's policy statements constitute a clear promise that he would not be terminated without the progressive disciplinary procedures. He therefore fails to satisfy the first element of the contract theory of *Duldulao*. See also *Torres v. Amoco Corp.* (1989), 186 Ill. App. 3d 135, 542 N.E.2d 154 (general policy statements did not meet the contractual requirements of an offer, because the statements were too indefinite to reasonably be interpreted as an offer by plaintiff); *Moore v. Illinois Bell Telephone Co.* (1987), 155 Ill. App. 3d 781, 508 N.E.2d 519, *appeal denied* (1987), 116 Ill. 2d 562 (no contract rights were created where employer's incentive plan would not lead employee to reasonably believe employer was making an offer because of disclaimer language in policy statement).

Although not clearly developed, Williams injects a second notion into his breach of contract theory, one that invokes a broad due pro-

cess argument relating to the type of administrative hearing provided and the sufficiency of proof required to establish that "just cause" existed for Williams' termination. Williams asserts that "if an implied contract of employment is found, one consequence is that the employment cannot be terminated without a finding that the disciplinary procedures, if any, have been followed (*Duldulao*) and where a public employer is involved, as here, that the employee has been afforded a hearing meeting standards of procedural due process in which the employer (CHA) has the burden of proving 'just cause' exists, and that the termination decision was grounded upon facts supporting 'just cause.' "

■ While it is true that the CHA policy directive states that "involuntary separations" must be for "just cause," Williams' assertion that his complaint states a cause of action for wrongful termination based on contract theory is incorrect. As we have held, his rights under the CHA policy directives did not include a contractual right to the progressive discipline procedure. Moreover, as a matter of basic pleading, Williams fails to set forth the factual basis upon which he concludes that the CHA's reasons for firing him were trivial or false. We cannot merely assume that the reasons were insufficient.

In any event, the record contains the written disciplinary notice that the CHA provided Williams regarding his imminent termination. This notice stated as follows: "You have displayed conduct and performance which is directly in violation of CHA policies. As a Maintenance Superintendent you have been flagrant in allowing employees to be away from work unauthorized. You have made decisions not within your realm of responsibility. You have intimidated staff by threatening punitive personnel action against subordinates who might lodge a complaint against you. You have condoned poor performance by your immediate assistant by submitting a satisfactory evaluation for an employee who has consistently demonstrated unsatisfactory performance."

■ Nowhere in Williams' third amended complaint is a single statement that sets forth the basis upon which the above charges against him should be considered "false, unrelated to Plaintiff, or trivial." The party seeking review of the merits of an administrative decision, based on sufficiency of the evidence presented, must give the court a reasonable basis upon which to review that decision. That was not done in this case. It is not the CHA's burden to show he was terminated for just cause on the motion to dismiss; it was Williams' burden to plead a valid theory upon which relief could be granted. He has failed to do so and we find no reason to reverse the dismissal of the

pending action. *Cf. Mitchell v. Jewel Food Stores* (1990), 142 Ill. 2d 152, 568 N.E.2d 827 (holding that because plaintiff who was terminated for falsifying time sheets had an explanation for his conduct and the employee manual constituted an enforceable contract under *Duldulao*, summary judgment in favor of employer in breach of contract action would be reversed for trial of factual issues in dispute).

## II

The other issue Williams raises in his brief relates to the standard of review employed by the trial court. He contends that the court erroneously treated the CHA's motion as one for summary judgment because the court stated it would not "review the weight and sufficiency of the evidence" and that it would not review the CHA's application of the "gross violation procedure, rather than the minor violation procedure." Williams argues that since he pleaded that the charges of misconduct against him were "minor," the CHA was required to follow the progressive disciplinary procedure. He also alleged that the evidence presented against him did not meet the contractual "just cause" standard.

Although Williams states that the trial court's comments "evince a misunderstanding of a motion to dismiss under section 2—615" of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615), we find it is Williams who has misunderstood. Our review of the transcript in the record demonstrates the court's awareness of the pertinent legal issues.

The trial court noted that count I of the complaint was a *"Duldulao"* count but found that Williams' pleading did not come within the holding of that case. The trial court remarked that *Duldulao* "held in broad terms that an employment manual issued by an employer to employees may become part of the contract of employment. In general, that case held that under appropriate circumstances if an employee is terminated in violation of procedural steps outlined in the employment manual, the employee may have an action for breach of contract." The trial court in the pending case rejected the argument that the CHA was compelled to grant Williams the benefit of the progressive discipline approach and, in that context, stated that the circuit court would not pass on the weight and sufficiency of the evidence relied upon by the hearing officer in upholding Williams' dismissal. Distinguishing *Duldulao* as a case requiring an employer to follow its own written procedures that have become an implied term of the employment contract, the trial court stated that it did not sit

as a reviewing court with respect to the CHA's factual determinations that an employee's violations were "gross" or "minor."

In our opinion, the trial court properly declined to review the factual basis upon which Williams was discharged. As noted, there was little in the record to review on this point. More significant, perhaps, is the trial court's refusal to judicially review the CHA's internal administrative disciplinary policies. Absent well-pleaded allegations that such policies are arbitrary and capricious or deny an employee due process or some other constitutional right, the courts generally will not pass on the wisdom of such policies or the adequacy of grounds for termination. In the pending case Williams fails to set out a breach of contract action premised on wrongful termination. He does not allege a violation of his constitutional rights and does not state a claim for relief based on any statute or common law principles with respect to his termination. Accordingly, we hold that the trial court did not err in granting judgment in favor of the CHA on its motion to dismiss for failure to state a cause of action.

Affirmed.

JOHNSON and McMORROW, JJ., concur.