EDWARD MANSOUROU *et al.*, Plaintiffs-Appellants, v. JOHN CRANE, INC., a/k/a John Crane-Houdaille, Inc., *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—92—2260

Opinion filed June 18, 1993.

Gleason & Fritzshall, of Chicago (Steven N. Fritzshall, of counsel), for appellants.

Gerald A. Golden, George M. Hoffman, and Lawrence M. Benjamin, all of Chicago (Neal, Gerber & Eisenberg, of counsel), for appellees.

JUSTICE McNULTY delivered the opinion of the court:

The plaintiffs' complaint against John Crane, Inc., a/k/a John Crane-Houdaille, Inc. (Crane), and its vice-president of human resources, Arthur J. DeStephano (DeStephano), alleged three claims arising from Crane's termination of the plaintiffs' employment. The first claim was for breach of contract alleging that an employment contract existed between plaintiffs and Crane requiring Crane to comply with a four-step progressive disciplinary policy before termination of employment and that Crane had not complied with this procedure before terminating them. Plaintiffs timely appeal from a summary judgment entered against them and in favor of Crane.

The sole issue presented is whether plaintiffs failed to raise a material issue of fact as to the existence of an employment contract between them and Crane, which Crane breached by its actions of termination. For the following reasons, we affirm.

Crane manufactures seals for use in industrial and automotive pumps. It employs about 1,500 people at its facility in Morton Grove, Illinois. Crane had a policy forbidding employees from being under the

influence of drugs and using, possessing, transferring or distributing drugs during work time or while on Crane's premises.

During 1987 and 1988, DeStephano was informed by Crane's in-house medical staff of increasing instances of drug use by on-duty employees. In response to these reports and an increasing number of accidents it believed was linked to drug use, Crane hired an outside consulting firm, Bensinger, DuPont & Associates, Inc. (Bensinger, DuPont), to develop a comprehensive drug and alcohol policy. Bensinger, DuPont then hired an investigation firm, SOA, to investigate the extent of Crane's employee drug abuse problem. To that end, SOA placed undercover investigators in Crane's plant as production employees. These investigators supplied daily reports to Bensinger, DuPont detailing their observations of drug use by specifically identified employees. Bensinger, DuPont then provided these reports to DeStephano. Approximately 10 meetings were held away from Crane's premises among DeStephano, representatives of Bensinger, DuPont and the SOA investigators to discuss the contents of the reports and positively identify the employees involved.

On July 19, 1989, Crane terminated about 41 employees, including the eight plaintiffs, identified by the investigators as violating Crane's drug policy.

Plaintiffs then filed a three-count complaint against Crane and others, count I of which is the subject of this appeal. That count alleged that Crane breached its employment contract with plaintiffs when it failed to apply a four-step progressive disciplinary procedure, to wit: first offense—verbal warning; second offense—written warning; third offense—three days' suspension; and fourth offense—dismissal, prior to discharging plaintiffs.

Plaintiffs contended that the above-described four-step disciplinary procedure was set forth in an employee handbook or manual which each received at the time he or she was hired. However, none of the plaintiffs was able to produce that manual nor could their witness, Angela Bower, who was deposed after the court had granted summary judgment in favor of defendants.

Crane filed its motion for summary judgment contending that there was no policy that required the company to comply with the four-step disciplinary procedure regardless of the company policy violated by the employees. In support of its motion, it noted plaintiffs' inability to produce the handbook allegedly containing the procedure. In further support of its position, Crane cited in its motion testimony from each of the plaintiffs' depositions and the deposition of DeStephano.

Plaintiffs filed their brief in opposition to Crane's motion for summary judgment containing, among other matters, excerpts from each of the plaintiffs' depositions and a one-page document purporting to be an interoffice memorandum setting forth, under the title "Attendance," the four-step disciplinary procedure referred to by plaintiffs in their complaint.

The court in granting defendants' motion for summary judgment ruled, as a matter of law, plaintiffs had failed to set forth sufficient facts to establish the existence of an employment contract between them and Crane upon which to predicate an action for breach of contract.

The plaintiffs, to survive a motion for summary judgment by Crane, had a duty to present a factual basis upon which a judgment could have been entered in their favor. See *Cole Taylor Bank v. Corrigan* (1992), 230 Ill. App. 3d 122, 595 N.E.2d 177; *Fuentes v. Lear Siegler, Inc.* (1988), 174 Ill. App. 3d 864, 529 N.E.2d 40; *Martin v. 1727 Corp.* (1983), 120 Ill. App. 3d 733, 458 N.E.2d 990.

To this end plaintiffs rely on one case: *Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314. That case recognized an exception to the at-will employment rule in Illinois. Unless plaintiffs can bring themselves within the *Duldulao* exception, it is undisputed that they were at-will employees who could be terminated for any reason or no reason, so long as the termination did not violate public policy. See, *e.g.*, *Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 478 N.E.2d 1354.

The supreme court in *Duldulao* sets forth three prerequisites for an employee handbook or policy statement to create enforceable contractual rights by meeting traditional requirements for contract formation:

> "First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement." *Duldulao*, 115 Ill. 2d at 490.

The trial court granted summary judgment for plaintiffs' failure to produce any factual basis establishing a clear and definite promise by Crane that employees would not be terminated without being afforded the progressive four-step disciplinary procedure described above. Plaintiffs unanimously agreed that Crane had this disciplinary

procedure but none could produce a manual or policy statement containing its terms. Crane's termination procedures in this case were unadmirable; however, plaintiffs were not ruled against, as they assert, because they failed to produce the employee manual, but because the plaintiffs were not able to produce sufficient evidence of the policy's existence or specific testimony of the alleged policy's terms. Excerpts from plaintiffs' depositions amply illustrate the evidentiary problems:

CANDELARIO MARTINEZ

"Q. This four-step policy, was that followed for a violation of any rule?

A. I'm not sure.

Q. Do you remember precisely what this manual said about ***

A. No.

Q. *** [W]hat it applied for?

A. No, it's been too long.

Q. What types of rule violations was the policy followed for?

A. I believe all of them. I'm not sure."

STEPHAN STEPHAN

"Q. How were you informed of the policy?

A. By the *** Yes, by the manual that they gave us, and that was the job security we were supposed to have.

Q. What precisely did the manual say?

A. I don't remember. I don't recall."

FREDERICK OSHANA

"Q. Did this booklet say what would happen to you if you were caught with drugs?

A. Yes.

Q. What did it say?

A. It says first you will get a verbal warning, four steps actually *** second, you will get written warning, third, you get three days off and, finally you are terminated.

Q. Do you know of any specific employees who were ever terminated after first getting a verbal warning, then a written warning, and then suspension?

A. No."

ALBERT JASSIM

"Q. There was a book that had this four-step policy. Do you have a copy of that book?

A. No."

EDWARD MANSOUROU

"Q. Did you understand what the company's policy was concerning the use of drugs?

A. No, sir, because I never had the experience.

Q. But did you understand what the policy was toward using drugs?

A. No, sir."

BASMA RIHANI

"Q. Okay. Were you ever told what the company's policy was concerning use of drugs?

A. Never.

Q. Is it your understanding of the policy if an employee was actually caught doing drugs on the premises, that they would first get a verbal warning under the policy?

A. I have no idea."

JULIET POLUS

"Q. Do you remember how it [the policy] was specifically stated in the manual?

A. No."

■ The determination of whether there exists a clear and definite promise is not for the trier of fact to determine, but is, rather, "a threshold question of law to be determined by the court." (*Harrell v. Montgomery Ward & Co.* (1989), 189 Ill. App. 3d 516, 521, 545 N.E.2d 373. See also *LaScola v. U S Sprint Communications* (7th Cir. 1991), 946 F.2d 559.) In *Koch v. Illinois Power Co.* (1988), 175 Ill. App. 3d 248, 529 N.E.2d 281, summary judgment was held appropriate where the language of an oral employment policy did not contain a clear and definite promise.

■ We determine that the plaintiff fails to surmount the first prong of the *Duldulao* test. The present case is analogous to the many cases which are dismissed at the pleading stage due to the absence of a sufficiently definite promise based upon which an employee could reasonably conclude that an offer had been made. See, *e.g., Altman v. City of Chicago* (1991), 224 Ill. App. 3d 471, 586 N.E.2d 698; *Williams v. Chicago Housing Authority* (1991), 217 Ill. App. 3d 1055, 578 N.E.2d 71; *Thierry v. Carver Community Action Agency of Knox County, Inc.* (1991), 212 Ill. App. 3d 600, 571 N.E.2d 484; *Lampe v. Swan Corp* (1991), 212 Ill. App. 3d 414, 571 N.E.2d 245; *Rudd v.*

*Danville Metal Stamping Co.* (1990), 193 Ill. App. 3d 1009, 550 N.E.2d 674.

In response to *Duldulao,* many employers included contract disclaimers in their employee handbook delineating disciplinary policies, and in most circumstances courts have held this sufficient to negate claims of a contract by the discharged employee regardless of the language used in the handbook. See, *e.g., Spann v. Springfield Clinic* (1991), 217 Ill. App. 3d 419, 577 N.E.2d 488; *Lee v. Canuteson* (1991), 214 Ill. App. 3d 137, 573 N.E.2d 318; *Chesnick v. Saint Mary of Nazareth Hospital* (1991), 211 Ill. App. 3d 593, 570 N.E.2d 545.

Reviewing courts have, however, recognized that employees are not relieved of the *Duldulao* exception to at-will termination where employee handbooks contain specific and promissory rules regarding discipline, the contract disclaimer provisions are hidden within the text of the handbook and are not set apart and distinct so as to be easily noticed by the employee. See, *e.g., Hicks v. Methodist Medical Center* (1992), 229 Ill. App. 3d 610, 593 N.E.2d 119 (wherein the court ruled in favor of the employer on other grounds); *Long v. Tazewell/Pekin Consolidated Communication Center* (1991), 215 Ill. App. 3d 134, 574 N.E.2d 1191.

Plaintiffs additionally introduced in evidence a one-page document which they contend sets forth the exact four-step disciplinary procedure Crane violated when it terminated them. There was no testimony or other evidence introduced at trial that this document relates to the defendants or that it was seen or relied upon by plaintiffs.

Putting aside these evidentiary infirmities for the sake of the argument, the document on its face is limited to attendance and provides in relevant part, as follows:

"COMPANY POLICIES PERTAINING TO THE FOLLOWING WILL BE
FOLLOWED TO THE LETTER OF THE POLICY:
1. ATTENDANCE

A) ABSENCE: MORE THAN ONE OCCURRENCE [*sic*] IN A FOUR WEEK PERIOD WILL BE CONSIDERED EXCESSIVE.

B) TARDINESS: MORE THAN TWO OCCURRENCES IN A FOUR WEEK PERIOD WILL BE CONSIDERED EXCESSIVE. THIS INCLUDES THE LUNCH PERIODS, [*sic*] LONG LUNCH PERIODS WILL NOT BE ALLOWED.

THE PROGRESSIVE DISCIPLINARY ACTION WHICH WILL BE FOLLOWED IS LISTED BELOW:

A) 1ST VIOLATION—VERBAL WARNING
B) 2ND VIOLATION—WRITTEN WARNING
C) 3RD VIOLATION—DISCIPLINARY LAYOFF (3 DAYS)
D) 4TH VIOLATION—DISCHARGE."

Plaintiffs were terminated for drug use, not for attendance problems. Plaintiffs' failure to produce the alleged policy or unequivocal testimony as to its specific terms, including the particular infraction to which it applies, is fatal to plaintiffs' case under the specificity requirement that is the essence of the first prong of the *Duldulao* test. In absence thereof, Illinois courts have concluded under *Rudd, Harrel, Koch,* and *Crenshaw v. DeVry, Inc.* (1988), 172 Ill. App. 3d 228, 526 N.E.2d 474, that such a policy does not give rise to any contractual rights.

Indeed, plaintiffs claim that the alleged policy is the same policy set forth in the one-page "Attendance" policy document set forth above. Further, plaintiffs assert in their brief that the progressive disciplinary policy contained therein should be applied to plaintiffs although they were terminated for drug use and not for attendance violations. This would require us not only to disregard the heading of the document but also to ignore the requirement of *Duldulao* that "the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made." *Duldulao*, 115 Ill. 2d at 490.

Finally, the testimony of former employee Angela Bower, who was deposed after summary judgment was granted in favor of Crane, is equally insufficient to create a genuine issue of material fact in this case.

She merely reiterated what plaintiffs had said about an employee manual containing the four-step disciplinary policy, which manual she could also not produce. Bower could not recall the language of the alleged policy and her testimony conflicts with certain plaintiffs' contentions that the alleged policy applied to all terminations. Bower testified that there were several situations involving a "criminal offense" where the four-step policy would not apply and termination would be immediate.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

MURRAY and COUSINS, JJ., concur.