MARK P. CUNNINGHAM, Plaintiff-Appellant, v. DMI, INC., Defendant-Appellee.

Third District    No. 3—93—0957

Opinion filed June 30, 1994.

Nile J. Williamson, of Peoria, for appellant.

Husch & Eppenberger, of Peoria (Michael R. Lied, of counsel), for appellee.

JUSTICE BRESLIN delivered the opinion of the court:

The plaintiff, Mark P. Cunningham, brought this action alleging that the defendant, DMI, Inc., discharged him from his employment with the defendant in violation of an employee manual which created contractual rights between the parties. The trial court granted the defendant's motion for summary judgment, finding that the plaintiff was not a contractual employee and, therefore, his employment could be terminated at will. The plaintiff appeals. We affirm.

The plaintiff was a full-time employee of the defendant from January 1988 until his termination in March 1992. The incident that led to his termination occurred in the fall of 1991, when he sent a cover letter and document entitled "Rules of Bedroom Golf" to Janet Mountjoy, who was the secretary of the president of the company. By means of innuendo, the "Rules" described various sex acts. The

plaintiff did not sign his name to the document or cover letter. Rather, he signed the name of a fellow employee and mentioned that the undersigned as well as another named employee were interested in "researching" various "rules" with Mountjoy.

Upon receiving the cover letter and "Rules," Mountjoy reported the incident, and an investigation was promised. In March 1992, Mountjoy recognized the handwriting on a document written by the plaintiff as the same as that on the cover letter. The plaintiff denied writing the cover letter when questioned by management. However, after a handwriting examiner determined that the handwriting on the cover letter matched the known samples of the plaintiff's handwriting, the plaintiff was fired. According to the defendant's disciplinary action form, the plaintiff was terminated for violating rule C-9, which prohibited "immoral behavior on company premises or during working hours." In its answer, the defendant stated that the plaintiff was also terminated because he lied about writing the cover letter.

The defendant's "Rules and Regulations" provided, *inter alia*:

> "It is essential that penalties for rules violated are imposed consistently from one department to another. Except in unusual cases, where mitigating circumstances exist, the same penalty should apply to all employees. The letter in the column along side each rule listed in paragraph three describes the appropriate penalties as follows: \*\*\*."

The document then lists *"Recommended"* penalties for various offenses ranging from a written warning to dismissal. The document further states that "[w]arnings may be issued by the supervisor on his own initiative[;] however, all layoffs or dismissals of employees must be approved by both the supervisor and Department Manager." The document continues "[w]henever any disciplinary action is taken, the disciplinary action form must be completed by the employee's immediate supervisor, signed by the employee and turned in to the Personnel Department."

On appeal, the plaintiff argues that the trial court erred in finding that the defendant's "Rules and Regulations" did not contain a promise clear enough that the employee would reasonably believe that a contractual offer had been made.

It is well settled that employment relationships of indefinite duration are presumed terminable at will by either party without cause unless facts support the existence of a contract. (*Long v. Tazewell/ Pekin Consolidated Communication Center* (1991), 215 Ill. App. 3d 134, 574 N.E.2d 1191; *Harrell v. Montgomery Ward & Co.* (1989), 189 Ill. App. 3d 516, 545 N.E.2d 373.) The leading case on the

factors necessary for an employer's policy manual to create enforceable contractual rights is *Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314. In *Duldulao*, the supreme court set forth a three-part test to determine if an employee manual creates enforceable contractual rights. All three factors must be met.

In the present case, the trial court found that the first *Duldulao* factor was not met. That factor provides that "the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made." (*Duldulao*, 115 Ill. 2d at 490, 505 N.E.2d at 318.) Whether this requirement has been met is a threshold question of law to be determined by the court. *Harrell v. Montgomery Ward & Co.* (1989), 189 Ill. App. 3d 516, 545 N.E.2d 373.

In *Duldulao*, the handbook set out a disciplinary procedure and then stated that employees are "never dismissed" without prior written admonitions and/or an investigation that has been properly documented, that three warning notices within a three-year period are "required" before an employee is dismissed and that termination "cannot" occur without proper notice and investigation. The supreme court found that the above language was sufficient to allow an employee to reasonably conclude that the disciplinary procedure was part of the employer's offer.

The most recent case to address the issue cited by the parties is *Vajda v. Arthur Andersen & Co.* (1993), 253 Ill. App. 3d 345, 624 N.E.2d 1343. There, various documents provided by the employer along with certain oral representations provided that an employee would never be summarily fired without a three-warning procedure. Moreover, a partner with apparent authority to bind the firm admitted that the defendant had a policy of requiring good cause for discharge. Under the circumstances, the reviewing court held that the trial court erred in granting summary judgment and that there was sufficient evidence in the record from which a trier of fact could conclude that the plaintiff was promised that he would not be dismissed absent good cause and even if good cause existed that a three-step warning policy would be followed.

In *Long v. Tazewell/Pekin Consolidated Communication Center* (1991), 215 Ill. App. 3d 134, 574 N.E.2d 1191, the court found that an employee manual created contractual rights by establishing a disciplinary procedure in unequivocal mandatory language. In *Long*, the manual provided that "[t]he following *shall be* established procedures for disciplinary problems[:] *** oral reprimand *shall be given* *** written reprimand *shall follow* *** [e]very employee shall have the *right* of appeal *** [i]n all cases of discipline, a memoran-

dum *shall be* made up by the *** director." (Emphasis added.) 215 Ill. App. 3d at 138.

In contrast with the above-discussed cases, the present defendant's "Rules and Regulations" do not contain such clear language indicating that the employer made an offer that certain disciplinary procedure would be followed. While there is arguably some mandatory language concerning procedure, it is apparent when viewing the instant policy as a whole that it does not rise to the level of an enforceable employment contract. There is no language indicating that an employee would only be dismissed for good cause shown or that the employee would never be dismissed without following the proper procedure. Instead the policy clearly states that the penalties listed are *"Recommended"* penalties. While the policy does state that it is essential that penalties be imposed consistently and that they should apply to all employees, this is not unequivocal mandatory language as was involved in the cases where it was found that contractual rights were created.

Regarding the procedures in cases of discipline, the policy states that warnings may be issued by the supervisor but dismissal must be approved by the supervisor and department manager and whenever any discipline is taken, the disciplinary action form must be completed by the supervisor. While we agree that this is mandatory language, the policy does not contain a clear promise that the employee would be dismissed only if these actions were taken. Moreover, we note that the procedure involved here was minor and of a clerical nature providing for approval by the supervisor and department manager and completion of a form after the fact. In contrast, the cases relied on by the plaintiff involved important procedural safeguards. (*Duldulao*, 115 Ill. 2d 482, 505 N.E.2d 314 (prior written admonitions and three warnings notices required); *Long*, 215 Ill. App. 3d 134, 574 N.E.2d 1191 (oral reprimand followed by written reprimand and a right to appeal dismissal); *Vajda*, 253 Ill. App. 3d 345, 624 N.E.2d 1343 (three-warning requirement before dismissal).) Given the lack of clear language in the defendant's policy from which it could reasonably be concluded that an offer was made, we find that the general rule in Illinois presuming employment "at will" prevails. Thus the trial court properly granted summary judgment for the defendant.

Accordingly, the judgment of the circuit court of Tazewell County is affirmed.

Affirmed.

SLATER, P.J., and BARRY, J., concur.