William ST. PETERS, Plaintiff–
Appellant,

v.

SHELL OIL COMPANY,
Defendant–Appellee.

No. 95–2222.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 19, 1996.

Decided Feb. 23, 1996.

---

Lee W. Barron, L. Thomas Lakin, Gail Renshaw (argued), Lakin Law Firm, Wood River, IL, for Plaintiff–Appellant.

Vincent H. Venker, II, Coburn & Croft, St. Louis, MO, Thomas M. Zulim (argued), Shell Oil Company, Legal Department, Houston, TX, for Defendant–Appellee.

Before POSNER, Chief Judge, and KANNE and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

William St. Peters brought this breach of contract action against his former employer, Shell Oil Company, alleging that Shell breached the terms of an enforceable contract when it terminated his employment without following progressive disciplinary procedures set forth in an "Employee Information Booklet" (the "handbook"). At the conclusion of St. Peters' case, the district court concluded that the handbook provisions did not create an enforceable contract and entered judgment for Shell. St. Peters argues on appeal that the district court erred when it determined that the handbook did not create a contractual obligation requiring Shell to utilize procedures of progressive discipline prior to its termination of his employment and that the district court also erred when it entered findings of fact and conclusions of law that went beyond the scope of the issue before the court on Shell's motion for judgment as a matter of law under Fed. R.Civ.P. 52(c). For the reasons discussed below, we affirm the judgment of the district court.

I.

St. Peters brought this action in Illinois state court whereupon it was removed to federal district court on the basis of diversity jurisdiction.[1] A bench trial was held and at

---

1. St. Peters also sued Larry Snell, his former manager at Shell, individually for the tort of intentional interference with the contractual rights allegedly existing between St. Peters and

the conclusion of St. Peters' case, Shell moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 52(c). In an oral bench opinion, the district court granted that motion, finding that St. Peters had failed to prove the existence of an enforceable contract.

The record establishes that St. Peters was employed by Shell as a safety supervisor at its Wood River Manufacturing Complex in Wood River, Illinois, from February 21, 1990 until he was terminated on February 11, 1992. The district court found that St. Peters was "terminated from his employment for insubordination and lack of forthrightness concerning his outside business activities." (Finding of Fact No. 17). The district court also found that St. Peters was not hired for a specific duration or period of time, did not execute a written employment contract, did not have an oral or an implied-in-fact employment contract with Shell, and was an at-will employee. (Finding of Fact Nos. 5–8, Conclusion of Law No. 2).

Approximately one month prior to his termination, St. Peters was provided with the handbook, which he contends contains a clear contractual promise that progressive discipline procedures will be followed prior to termination of employment. The district court disagreed, however, and found that the handbook did not create a contract requiring the use of progressive discipline, did not contain a promise modifying St. Peters' status as an at-will employee, and did not contain a promise or mandate to follow progressive discipline prior to termination. (Finding of Fact Nos. 10–12, Conclusion of Law Nos. 3–5).

Our attention is therefore drawn to the terms of the handbook with a particular focus on the provisions which relate to progressive discipline. Reference to progressive discipline first appears in the handbook section pertaining to "[y]our individual responsibilities and guidelines for conduct." Within the subsection entitled "coaching and counseling," the handbook provides that:

> To continue working at WRMC, each employee must meet WRMC's performance

expectations. For the few employees who do not make that commitment, progressive discipline and/or discharge may result. Additional information about progressive discipline is outlined in Appendix A. You should refer to Appendix B for "Rules involving Disciplinary Action."

Appendix A, entitled "Formal Levels of Progressive Discipline," explains that "[f]or the few employees who do not respond to counseling from their immediate supervisor, Progressive Discipline is designed to provide consistent follow-up to address those performance problems." Appendix A then describes in detail the three, formal levels of progressive discipline, which are, respectively, verbal reminder, letter reminder and disciplinary suspension. A letter reminder "will occur" either when "an employee's commitment to improve is not immediately met and sustained following a Verbal Reminder," or when "an employee's actions warrant a Letter Reminder whether or not a Verbal Reminder has been issued in the past." Similarly, a disciplinary suspension "will occur" either when "an employee's commitment to improve is not immediately met and sustained following a Letter Reminder," or when "[a]n employee's action is so serious that it warrants a Disciplinary Suspension whether or not a Verbal Reminder or Letter Reminder has been issued in the past." The next subsection, entitled "Termination of Employment" then provides that:

> In cases where employees do not fulfill their obligations, the Company may take disciplinary action up to and including discharge. Termination results when:
>
> —An employee does not immediately improve and maintain an overall satisfactory work record following the Disciplinary Suspension.
>
> —or—
>
> —The employee's action is so serious that the Formal Levels of Progressive Discipline are not warranted.

Appendix A concludes with the statement that:

Shell. This claim was dismissed prior to trial and is not at issue in this appeal.

... most employees respond to coaching and counseling. For the few who do not, it is management's sincere intention that Progressive Discipline will alert the employee to the seriousness of the situation and correct unacceptable behavior before discharge is warranted. Management will take reasonable steps to assist an employee in attaining acceptable behavior; however, the responsibility for change rests solely with the employee.

Appendix B immediately follows with the "Rules Involving Disciplinary Action." As explained in the introductory language:

> To protect the safety and welfare of employees, to protect Company property, and to provide for the proper operation of the Complex, it is necessary to maintain discipline and to establish certain rules which must be observed. Violations of rules are considered serious and should be avoided. Although the rules in this section are listed as "Rules Involving Disciplinary Action," violation of other Complex rules may also require disciplinary action.

Appendix B then goes on to list several subsections (A–F) describing rules in the following areas: performance expectations; loafing, loitering, and unauthorized visiting; personal work; reading on the job; personal radios and televisions; and cameras.

Subsection G of Appendix B is entitled "Discharge or Discipline" and enumerates ten acts "of such serious nature as to warrant immediate dismissal from employment." Subsection G of Appendix B then identifies an additional eleven "irregularities" that "also are serious, and violations while on duty or on Complex property will result in dismissal unless mitigating circumstances justify less drastic action." Among these eleven "irregularities" we find insubordination.

## II.

■ Illinois recognizes that employee handbooks or other policy statements may modify an at-will employment relationship and create enforceable contract rights "if the traditional requirements for contract formation are present." *Duldulao v. St. Mary of Nazareth Hospital Center*, 115 Ill.2d 482, 106

Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987). The first requirement is that the handbook language "must contain a promise clear enough that an employee would reasonably believe that an offer has been made." *Id.* Secondly, the handbook "must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer." *Id.* Finally, "the employee must accept the offer by commencing or continuing to work after learning of the policy statement." *Id.* Whether or not a contract exists is a question of law. *Boulay v. Impell Corp.*, 939 F.2d 480, 482 (7th Cir.1991); *Mansourou v. John Crane, Inc.*, 248 Ill.App.3d 963, 188 Ill.Dec. 119, 121, 618 N.E.2d 689, 692 (1993). The district court concluded that the handbook here failed to satisfy *Duldulao*'s first prong, as it did not contain a clear promise that an employee would reasonably construe as an offer.

■ In contesting that conclusion here, St. Peters argues that an employee reading the handbook language would reasonably believe that he or she would not be terminated unless Shell had first provided the employee with the benefit of the formal levels of progressive discipline described therein. The standard for determining whether a promise is clear enough that an employee would reasonably rely on it is an objective rather than a subjective one. *Tolmie v. United Parcel Service*, 930 F.2d 579, 581 (7th Cir.1991). The real issue here is whether the district court was correct when it concluded, as a matter of law, that the handbook did not create a contract mandating the use of progressive discipline. We apply a *de novo* standard of review to the legal conclusion reached by the district court. *Business Records Corp. v. Lueth*, 981 F.2d 957, 959 (7th Cir.1992).

■ As we apply the test established by *Duldulao*, we begin with the primary principle that "an employee handbook or similar document creates enforceable contractual rights only when specific procedures have been prescribed by positive and mandatory language." *Doe v. First Nat'l Bank of Chicago*, 865 F.2d 864, 872 (7th Cir.1989). Only then can the handbook alter the terms of otherwise at-will employment. Employees

reading the handbook section pertaining to individual responsibilities and guidelines for conduct are advised that "progressive discipline and/or discharge may result." This language is clearly discretionary, not mandatory. It is certainly not promissory. It suggests that progressive discipline may, but need not, result from, for example, poor performance. It does not say that a Shell employee cannot be terminated unless Shell follows prescribed procedures of progressive discipline. If there was nothing more, our inquiry would be over. However, the reader is directed to Appendix A for additional information about progressive discipline and to Appendix B for rules involving disciplinary action.

As noted above, Appendix A, "Formal Levels of Progressive Discipline," allows Shell, in its discretion, to skip one or more of the three formal levels of progressive discipline (verbal reminder, letter reminder and disciplinary suspension) and go straight to termination depending upon its assessment of the seriousness of the employee's action. Thus, a letter reminder may issue in the absence of a prior verbal reminder. A disciplinary suspension may be imposed despite the lack of a prior verbal or letter reminder. Finally, some conduct is regarded as so serious that the formal levels of progressive discipline are by-passed altogether and immediate termination is required. By its very terms, Appendix A does not guarantee that the formal levels of progressive discipline will be followed in all cases and without exception. We have found that similar handbook language permitting an employer to "jump the queue" is "too loose and vague to confer a legally enforceable right" to progressive discipline. *Campbell v. City of Champaign*, 940 F.2d 1111, 1112–13 (7th Cir.1991). *See also Gibb v. World Book, Inc.*, 29 F.3d 411, 414 (8th Cir.1994) (applying Illinois law); *Frank v. South Suburban Hospital Foundation*, 256 Ill.App.3d 360, 195 Ill.Dec. 489, 493, 628 N.E.2d 953, 957 (1993); *Williams v. Chicago Housing Authority*, 217 Ill.App.3d 1055, 160 Ill.Dec. 892, 895–96, 578 N.E.2d 71, 74–75 (1991).

We next turn to Appendix B, "Rules Involving Disciplinary Action," which, as described above, delineates ten acts deemed so serious "as to warrant immediate dismissal," together with an additional eleven "irregularities" that "will result in dismissal unless mitigating circumstances justify less drastic action." Again, the point here is that the handbook expressly contemplates that Shell may immediately terminate an employee for any number of rule violations without utilizing the "formal levels of progressive discipline."

Both Appendix A and Appendix B are entirely consistent with the handbook language that "progressive discipline and/or discharge may result." We agree with the district court that the handbook language relied upon by St. Peters does not create an enforceable contract right to progressive discipline prior to termination under *Duldulao.*

■ Shell suggests that even if we were to find that the handbook created a contractual obligation to utilize progressive discipline in some circumstances, such a finding would not help St. Peters. (Shell Br. at 19–20). We agree. The district court found that St. Peters "was terminated from his employment for insubordination and lack of forthrightness concerning his outside business activities." (Finding of Fact No. 17). Insubordination is listed in Appendix B as one of the "irregularities" for which "violations while on duty or on Complex property will result in dismissal unless mitigating circumstances justify less drastic action." If the disciplinary procedures in the handbook had been part of an enforceable contract, this language would seem to convey a clear promise that mitigating circumstances will be considered by Shell prior to termination for insubordination. Although the district court did not make a finding as to whether mitigating circumstances were, in fact, considered by Shell, the record indicates that Shell did consider mitigating circumstance prior to the termination of St. Peters. (Tr. v. I at 29, 125; Tr. v. II at 324–25). Thus, even if we were to find either that the handbook created a contractual obligation requiring progressive discipline under some circumstances or that in cases where immediate termination is imposed for insubordination Shell must consider mitigating cir-

cumstances, such a victory would be a pyrrhic one for St. Peters.

Our finding that the handbook language fails to create a contractual obligation under the standard set by *Dulduao* resolves the merits of this appeal against St. Peters. We therefore need not consider his additional argument that certain other findings of fact went beyond the scope of the issue that was before the district court on Shell's motion for judgment pursuant to Fed.R.Civ.P. 52(c).

AFFIRMED.