MICHELLE ANNE WHEELER, Plaintiff-Appellee, v. PHOENIX COMPANY OF CHICAGO, Defendant-Appellant.

Second District No. 2—95—0418

Opinion filed December 1, 1995.

Chester A. Lizak, of DiMonte, Schostok & Lizak, of Park Ridge, for appellant.

Connie J. Butcher, of Law Offices of Trent & Butcher, of Carol Stream, for appellee.

JUSTICE HUTCHINSON delivered the opinion of the court:

In this action for breach of employment contract, defendant, the Phoenix Company of Chicago, appeals the trial court's judgment for plaintiff, Michelle Anne Wheeler, following a bench trial. The issues on appeal are whether (1) defendant's employee handbook created an employment contract that required defendant to follow a progressive disciplinary process in order to discharge plaintiff; and (2) defendant complied with the employee handbook when it discharged plaintiff. We affirm.

On June 13, 1990, defendant hired plaintiff as an inside salesperson. Plaintiff signed an employment agreement, was given a copy of

defendant's employee handbook, and was required to sign an acknowledgment which stated "I have read the Employee Handbook completely and understand it. I agree to conform to the rules and regulations set forth in the handbook and understand that I can be discharged at any time, with or without notice for violation of any of the rules in the handbook."

Page 3 of the handbook states in relevant part that "[t]he first 90 days of employment is a trial period. *** Completion of this period does not guarantee continued employment for any specified period of time, nor does it require that an employee be discharged for 'cause.' "

Page 13 of the handbook states in relevant part that "[i]n the event of any infraction of Company rules, the following procedure will be used. The Company will use a progressive disciplinary procedure."

Page 15 of the handbook states in relevant part:

"Depending on the severity or continued infraction of any of the above rules, any violation may be grounds for disciplinary action which could be cause for immediate dismissal.

*Immediate Dismissal* ... To protect an employee against unfair dismissal, an employee normally will not be discharged without first receiving a written warning. However, certain infractions can subject you to immediate dismissal. In those situations, written permission from the President to immediately dismiss an employee will be obtained and given to the Supervisor. Those situations include:

1. Any employee clocking another employee 'in' or clocking an employee 'out'.

2. Any employee intentionally falsifying Company records, including time records and personnel records.

3. Any employee taking any item belonging to the Company or another employee without authorization.

4. Any employee distributing, publicizing or revealing confidential Company information without the written approval of the President.

5. Any employee taking or removing any electronic data processing data (including handwritten or hard copy produced) from the premises without written approval of the President."

In early January 1991, Michael Machura, defendant's president, received a call from Pennstock, a company with which defendant was trying to secure a business relationship. Pennstock was inquiring about expediting an order with defendant. Machura talked with plaintiff because she had not acted on the request. Machura helped plaintiff determine the pricing for the order which she did not understand.

On January 18, 1991, Machura received a facsimile from Pennstock requesting that another order be expedited. Pennstock complained that it could suffer financial penalties if the deliveries were not timely. Machura testified that he spoke to plaintiff about the importance of the Pennstock account and the need to send the information that day. Machura testified that he received a call from Pennstock the next day complaining that it had received no response. Machura testified that plaintiff did not have an explanation for her failure to respond.

On January 25, 1991, several members of defendant's management attended a meeting with plaintiff. Plaintiff's supervisor, Nancy DiMarco, testified that the meeting was a routine performance review. However, William Walthall, defendant's national sales manager, and Carol Merry, defendant's personnel manager, testified that the meeting was a disciplinary meeting to inform plaintiff of complaints about her failure, among other things, to respond to client requests.

On January 30, 1991, Machura told plaintiff that an order to Pennstock had to go out the following day through Federal Express one-day service and that the shipping charges had to be reversed so that defendant would pay them. On January 31, 1991, plaintiff called in sick. She did not reverse the charges, and she did not arrange for someone else to do it. On February 1, 1991, defendant terminated plaintiff's employment. Machura testified that plaintiff was not terminated for one of the five reasons listed in the "Immediate Dismissal" section of the employee handbook.

On March 26, 1992, plaintiff filed a complaint for breach of employment contract alleging that defendant wrongfully terminated plaintiff by failing to follow the progressive disciplinary policy in defendant's employee handbook.

On December 12, 1994, the matter proceeded to a bench trial. On December 13, 1994, the trial court found that the policies and procedures of the employee handbook were part of plaintiff's employment contract, that defendant did not comply with the policies and procedures in the employee handbook, and that plaintiff's termination was wrongful. The trial court entered judgment for plaintiff. On March 29, 1995, the trial court denied defendant's post-trial motion. Defendant filed a timely notice of appeal.

Defendant argues that the trial court erred in finding that the employee handbook created an employment contract that required defendant to follow a progressive disciplinary process in order to discharge plaintiff. We disagree.

In Illinois, an employee who is hired without a fixed term is

presumed to be an employee "at will." However, an employment handbook "creates enforceable contractual rights if the traditional requirements for contract formation are present." (*Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 490.) An employee handbook creates contractual rights when (1) the handbook language contains a promise clear enough that the employee would reasonably believe the employer has made an offer; (2) the handbook is disseminated so to make the employee aware of its contents and lead the employee to reasonably believe an offer has been made; and (3) the employee then commences or continues working, thereby accepting the offer. (*Duldulao*, 115 Ill. 2d at 490.) An example of such a contractual right is a handbook containing a clear statement that an employee can only be discharged pursuant to a progressive disciplinary policy. (*Duldulao*, 115 Ill. 2d at 490.) Our supreme court has stated that an employee manual may constitute "a specific offer for a unilateral contract—the [employer's] promise in exchange for the employee's performance, *i.e.*, the employee's labor." *Duldulao*, 115 Ill. 2d at 490, citing *Pine River State Bank v. Mettille* (Minn. 1983), 333 N.W.2d 622, 630.

In *Duldulao*, the provisions of the employee handbook became binding on the employer because of the clear promises made and the fact that the handbook contained no disclaimers to negate the promises made. (*Duldulao*, 115 Ill. 2d at 491.) In the present case, defendant argues that the promise of a progressive disciplinary policy was not binding because the employee handbook contained disclaimers.

In applying *Duldulao*, courts have divided over whether disclaimers contained within employee handbooks are sufficient to negate promises made. In *Robinson v. Christopher Greater Area Rural Health Planning Corp.* (1991), 207 Ill. App. 3d 1030, the court held that the promises in the manual were negated by language in the manual which stated that the employer " 'assumes no contractual liability to any employee via the job description or this publication.' " (Emphasis omitted.) (*Robinson*, 207 Ill. App. 3d at 1036.) Conversely, in *Perman v. ArcVentures, Inc.* (1990), 196 Ill. App. 3d 758, the court held that an employee manual created an enforceable contractual relationship despite disclaimer language. *Perman*, 196 Ill. App. 3d at 765.

We have previously held that disclaimer language within an employee manual or policy statement may negate language which could otherwise reasonably be believed to be an offer for a unilateral contract. In both *Moore v. Illinois Bell Telephone Co.* (1987), 155 Ill. App. 3d 781, and *Condon v. American Telephone & Telegraph Co.*

(1991), 210 Ill. App. 3d 701, the employer included language expressly stating that the document " 'is not a contract' " (*Moore*, 155 Ill. App. 3d at 783; *Condon*, 210 Ill. App. 3d at 705), or " 'is intended as a general policy statement \*\*\* and not as a contract or commitment' " (*Condon*, 210 Ill. App. 3d at 705). The employee manual in the present case contains no such express, explicit, and unequivocal disclaimer of contractual obligation by defendant. *Moore* and *Condon*, therefore, are not dispositive.

A third line of cases holds that only conspicuous disclaimer language negates promises made in an employment manual or policy statement. In *Hicks v. Methodist Medical Center* (1992), 229 Ill. App. 3d 610, the purported disclaimer appeared on page 38 and stated " '[i]t is not the intent of \*\*\* the Personnel Handbook to establish contractual agreement between [the employer] and employees.' " (*Hicks*, 229 Ill. App. 3d at 612.) The court held that a contract existed between the employer and the employee because the disclaimer language was neither "conspicuous" nor "highlighted, printed in capital letters, or in any way prominently displayed." (*Hicks*, 229 Ill. App. 3d at 614.) In *Long v. Tazewell/ Pekin Consolidated Communication Center* (1991), 215 Ill. App. 3d 134, the purported disclaimer appeared within the description of the employee's duties. (*Long*, 215 Ill. App. 3d at 139.) The disclaimer stated " '[t]he [employee's] position \*\*\* is a non-civil service position. The employer may discharge the employee at any time.' " (*Long*, 215 Ill. App. 3d at 139.) The *Long* court refused to enforce the disclaimer because it "was not distinctly set out separate and apart." *Long*, 215 Ill. App. 3d at 140; see also *Robinson*, 207 Ill. App. 3d at 1039 (Goldenhersh, J., dissenting).

The law of warranty is an appropriate place to turn for guidance in determining whether a disclaimer is valid under *Duldulao*. Both the *Duldulao* doctrine and warranty law are based in contract. At its core a contract is an agreement between parties to either act or refrain from acting in a particular fashion. In this way the unilateral contract described in *Duldulao* is little different than a contract governed by the Uniform Commercial Code (Code) (810 ILCS 5/1— 101 *et seq.* (West 1994)). The law of warranty is a tool used to ensure contracting parties receive the full benefit of the bargains they enter. The same fundamental contract principles giving rise to warranty also underlie the *Duldulao* doctrine. Therefore, when determining how to construe the provisions of an alleged unilateral contract under *Duldulao*, it is appropriate to look to the law of warranty.

The law governing express warranties is inapplicable to *Duldulao*. Under the Code, express warranties may not be disclaimed. (See *Snelten v. Schmidt Implement Co.* (1995), 269 Ill. App. 3d 988, 993.)

We have already stated that offers may be disclaimed under the *Duldulao* doctrine. This is appropriate in light of the presumption of at-will employment. Permitting an employer to bypass procedures outlined in an employee handbook preserves the efficacy of such handbooks—clearly enunciating the rights and duties of employees—without altering the nature of at-will employment whenever an employee handbook is issued. Additionally, parties will maintain the ability to craft particular employment relationships through the process of bargaining and contracting.

The Code, however, also provides that an effective disclaimer of an implied warranty must be conspicuous. (See 810 ILCS 5/2—316(2) (West 1994).) Underlying this requirement is the desire "to protect a buyer from unexpected and unbargained language of disclaimer by *** permitting the exclusion of implied warranties only by conspicuous language or other circumstances which protect the buyer from surprise." (810 ILCS Ann. 5/2—316, Uniform Commercial Code Comment 1, at 230 (Smith-Hurd 1993).) Under the Code, contract language is conspicuous if it is " 'so written that a reasonable person against whom it is to operate ought to have noticed it.' " (*Lytle v. Roto Lincoln Mercury & Subaru, Inc.* (1988), 167 Ill. App. 3d 508, 517, quoting Ill. Rev. Stat. 1985, ch. 26, par. 1—201(10) (now 810 ILCS 5/1—201(10) (West 1994)).) Put simply, the conspicuousness requirement ensures offerees are not unfairly denied the benefit of the bargain they negotiated.

■ The same rationale applies to the present case. The employee handbook offered plaintiff the benefit of a progressive disciplinary policy if she accepted employment with defendant. This benefit is not required by law. (*Duldulao*, 115 Ill. 2d at 489 (employment relationship without a fixed term is presumed to be at will).) The policy, therefore, must be viewed as an inducement for plaintiff to become an employee of defendant, *i.e.*, as a basis of the employment bargain. This being the case, it would be unfair for defendant to disclaim the progressive disciplinary policy in a nonconspicuous manner. We join the *Long* and *Hicks* courts in holding that contractual obligations arising under *Duldulao* may only be negated via conspicuous disclaimers.

In the present case, the employee manual states that the company will use a progressive disciplinary procedure. The manual creates an exception which allows for immediate dismissal under five enumerated circumstances. The handbook does state completion of the trial period does not require that an employee be discharged for cause. However, as in *Long* and *Hicks*, this language is not in any way distinguished from the rest of the text.

Plaintiff also signed a separate acknowledgment which stated that she understood that she could "be discharged at any time, with or without notice, for violation of any of the rules in the handbook." The primary purpose of this acknowledgment was to make plaintiff understand that she was expected to read and follow the rules and regulations of the employee handbook. We conclude that, since the acknowledgment referred to the rules of the handbook as the basis for defendant's right to discharge plaintiff, the acknowledgment was not a disclaimer of the rules and policies created in the handbook.

Moreover, any ambiguities in the language contained within an employee manual must be construed against the drafter of the language. (*Duldulao*, 115 Ill. 2d at 493; *Long*, 215 Ill. App. 3d at 140.) Additionally, unlike both *Moore* and *Condon*, the disclaimer language in the present case does not contain the unequivocal statement that the employee handbook "is not a contract" or other words to that effect. Therefore, we hold that the trial court did not err in finding that the language in the handbook and in the acknowledgment did not negate the unequivocal language in the employee handbook promising the use of a progressive disciplinary policy.

Defendant next contends that the trial court erred in finding that defendant did not comply with the policies created in the employee handbook when it discharged plaintiff. The employee handbook provides that normally an employee will not be discharged "without first receiving a written warning." Defendant argues that it complied with the provision in the employee handbook for immediate dismissal which creates an exception to the written warning requirement.

However, the section in the employee handbook which provides for immediate dismissal with written permission from the president of the company lists five specific situations in which immediate dismissal may occur. Defendant's president testified that plaintiff was not dismissed for any of the listed reasons. The trial court noted this fact in finding that defendant did not comply with the disciplinary policies of the employee handbook. An employee reading the employee handbook would reasonably believe that she would not be terminated without prior written warning except in the specific circumstances enumerated. Again, this ambiguity must be construed against defendant as the drafter of the employee handbook. (*Duldulao*, 115 Ill. 2d at 493; *Long*, 215 Ill. App. 3d at 140.) Therefore, we cannot conclude that the trial court erred in finding that defendant did not comply with the disciplinary policies of the employee handbook.

For the foregoing reasons, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

GEIGER and DOYLE, JJ., concur.