McDONALD'S OPERATORS RISK MANAGEMENT ASSOCIATION, INC., Plaintiff-Appellant, v. CORESOURCE, INC., f/k/a Creative Risk Management Corporation, Defendant-Appellee.

First District (5th Division)    No. 1—98—1722

Opinion filed August 20, 1999.

Katten, Muchin & Zavis, of Chicago (Ronald S. Betman, Kristin J. Achterhof, and James R. Lane, of counsel), for appellant.

Peterson & Ross, of Chicago (William A. Chittenden III and Laura A. Smith, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:
Plaintiff McDonald's Operators Risk Management Association,

Inc. (MORMA), appeals from the circuit court's grant of summary judgment to defendant CoreSource, Inc. (CoreSource), and against MORMA. The court concluded as a matter of law that CoreSource did not breach its service agreement (Agreement) with MORMA to provide claims administration services for a fee, finding that CoreSource was required to handle claims only during the Agreement's two-year term and not to the conclusion of each claim, as MORMA alleged.

The issues presented by this appeal include whether the circuit court erred when it (1) entered summary judgment in favor of Core-Source and denied MORMA's motion therefor; and (2) stayed discovery until after its consideration of the cross-motions for summary judgment.

MORMA is a not-for-profit corporation that operates as a group workers' compensation self-insurance pool, providing workers' compensation, occupational disease and other employer liability coverage to individual McDonald's franchise owners. MORMA sought proposals from various insurance pooling administrators to manage and oversee the combined workers' compensation funds of numerous store owners, focusing on two criteria: (1) each administrator's relative ability to offer McDonald's employees consistent and reliable handling for any and all job-related injury claims; and (2) efficient and competent management and claims handling services. MORMA alleged it was critical that the administrator be willing and able to handle and manage to conclusion all claims that occurred during the term of the contract, which would permit employees' injury claims to be handled consistently and, after the end of a contract term, would not require MORMA to reassign claims files to a new administrator.

CoreSource, a third-party administrator providing claims administration services for workers' compensation programs, submitted proposals to MORMA. CoreSource proposed, in part, that it would "handle all claims to completion," that its professional review would be performed "until the claim is closed," and that each of its services would be provided "for the lifetime of the claim." MORMA asserts that these proposals and the related testimony and information are among the parol evidence that the circuit court should have considered in deciding the parties' cross-motions for summary judgment. After considering CoreSource's proposals, MORMA agreed to contract with CoreSource. The questions that emerge, however, are whether those CoreSource proposals were later articulated and incorporated in the contract prepared by MORMA and signed by the parties.

MORMA and CoreSource executed the MORMA Agreement, effective January 1, 1993. CoreSource agreed to provide "management and administration for all claims against MORMA which occur during the

period of this agreement." MORMA agreed to pay CoreSource the precise amount CoreSource stated in its proposal, $336,000 per year. The Agreement specified that the period of the contract was from January 1, 1993, to December 31, 1994.

A MORMA executive averred, in an affidavit submitted in support of MORMA's summary judgment motion, that he was connected with the implementation of the Agreement; such agreements are commonplace in the industry; and they require an administrator to service all claims to conclusion unless the contract explicitly provides otherwise, which the Agreement between MORMA and CoreSource did not stipulate. CoreSource informed the MORMA executive that it was required by the State of Michigan, the only other state in which CoreSource previously had conducted business, to include in its contract price the cost of handling all claims to conclusion and that it used the same formula to determine the cost of providing administrative services to MORMA.

MORMA later requested that CoreSource also administer claims made during the preceding three-year period (1990-92) (take over period) for an additional fee of $55,000. On May 26, 1993, MORMA sent CoreSource a letter confirming this arrangement which was identified by MORMA as the "Take Over Agreement" (May Agreement). As part of the May Agreement, CoreSource agreed "that if any new claims or reopening of existing claims occur for prior years, CoreSource [will] include those cases in the total payment of $55,000." The May Agreement was executed nearly five months after execution of the Agreement and was a completely separate document, which neither referenced the Agreement nor identified itself as an addendum.

When the term of the Agreement expired on December 31, 1994, MORMA did not renew it. CoreSource thereafter refused to continue servicing the claims that occurred during the Agreement period and the takeover period. CoreSource averred, through an executive's affidavit submitted in support of its summary judgment motion, that although CoreSource performed claims administration services for MORMA during December 1994, MORMA failed to pay the monthly fee of $23,833.33.

On March 15, 1996, MORMA filed a four-count complaint against CoreSource. Counts I and II alleged breaches of contract in that CoreSource failed to provide claims administration services with respect to workers' compensation claims made against MORMA during the periods 1993-94 and 1990-92, respectively, but not concluded by December 31, 1994, as required under the terms of the Agreement and the May Agreement. Counts III and IV were dismissed with prejudice on April 4, 1997.

In its answer to counts I and II of MORMA's complaint, Core-Source admitted the existence of the contract to provide claims administration services, but denied MORMA's allegations as to the terms of the contract, denied that it breached the contract and denied that MORMA sustained damages. Concurrently, CoreSource filed a counterclaim, alleging that MORMA wrongfully withheld the final monthly payment under the Agreement in the amount of $23,833.33. Subsequently, CoreSource and MORMA each moved for summary judgment.

On January 21, 1998, the circuit court awarded summary judgment to CoreSource on counts I and II of MORMA's complaint and on CoreSource's counterclaim, and denied MORMA's cross-motion for summary judgment. In its written opinion, the court found: (1) the Agreement and May Agreement established that the obligations of the parties ended on the specified termination date; and (2) that MORMA's interpretation of the Agreement, namely, that the language of paragraph 2(a) of the contract imposed a continuing obligation on CoreSource to service workers' compensation claims beyond the termination of the Agreement, was unreasonable and did not render the contract ambiguous. MORMA appeals.

## I

MORMA first contends that the circuit court erred when it granted CoreSource's motion for summary judgment and denied MORMA's cross-motion for summary judgment, based upon MORMA's conception of the plain meaning of both contracts, that is, both the Agreement and the May Agreement require CoreSource to handle all claims to conclusion.

Summary judgment is properly granted where the pleadings, depositions, admissions on file and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005 (West 1996); *Mobil Oil Corp. v. Maryland Casualty Co.*, 288 Ill. App. 3d 743, 751, 681 N.E.2d 552 (1997) (*Mobil*); *Maher & Associates, Inc. v. Quality Cabinets*, 267 Ill. App. 3d 69, 77, 640 N.E.2d 1000 (1994) (*Maher*). The movant's right must be clear and free from doubt; any evidence supporting the motion must be strictly construed against the movant and liberally construed favoring the respondent. *Kleinwort Benson North America, Inc. v. Quantum Financial Services, Inc.*, 285 Ill. App. 3d 201, 208-09, 673 N.E.2d 369 (1996); *Maher*, 267 Ill. App. 3d at 77. A genuine issue of material fact exists in contract cases when a key provision of a contract is ambiguous, requiring admission of extrinsic evidence. *Dudek, Inc. v. Shred Pax Corp.*, 254 Ill. App. 3d 862, 868-69,

626 N.E.2d 1204 (1993) (*Dudek*); *Montes v. Hawkins*, 126 Ill. App. 3d 419, 424, 466 N.E.2d 1271 (1984) (*Montes*). Whether such ambiguity exists is a question of law for the circuit court to decide (see *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 288, 565 N.E.2d 990 (1990)); if reasonable persons could draw different inferences from undisputed facts, summary judgment is inappropriate, and the matter should proceed to trial. *Maher*, 267 Ill. App. 3d at 77; *Montes*, 126 Ill. App. 3d at 423-24. Because this case is an appeal from an order granting summary judgment not involving credibility determinations, review is *de novo*. *Mobil*, 288 Ill. App. 3d at 751; *English Co. v. Northwest Envirocon, Inc.*, 278 Ill. App. 3d 406, 410, 663 N.E.2d 448 (1996).

MORMA argues that summary judgment should have been entered in its favor on the breach of Agreement count (count I) of its complaint, where: (1) the plain meaning of section 2(a) of the Agreement established that CoreSource would handle to conclusion all claims that occurred during the term of the Agreement; and (2) the Agreement as a whole required a finding that CoreSource must handle all claims to conclusion.

CoreSource responds that the plain language of the MORMA Agreement expressly limited its duration to two years and is devoid of any provision imposing a continuing obligation to administer claims beyond the termination date. CoreSource argues that the parties clearly contemplated a two-year duration when they negotiated the service fee. Moreover, CoreSource asserts, the Agreement contains a merger clause and therefore is totally integrated.

Several relevant paragraphs of the Agreement provide, in part:

> "2. CRMC agrees to serve as MORMA's administrator. The regular duties of the administrator shall include all responsibilities as set forth in the rules and regulations promulgated by the Illinois Department of Insurance described in Subchapter hh, Workers' Compensation and Employers' Liability Acts, and 50 Ill. Adm. Code Part 2901, Workers' Compensation Self-Insurance Regulations, and will specifically include:
>
> a. Providing management and administration for all claims against MORMA which *occur* during the period of this Agreement.
> * * *
> 4. Should this agreement expire or be cancelled for any reason, CRMC shall:
>
> a. Immediately turn over to the Board or its designated representatives, *all active* member files which shall include loss control records, surveys and correspondence, underwriting surveys, premiums and contribution calculations, reinsurance and excess insurance files, *all active* and closed claim files, member files, read-

able form copies of all regulatory filings, and reports with current trustee reports;

b. Complete all audits and billings which it had begun prior to the date of expiration or cancellation of this Agreement;

c. Assist and cooperate with any *successor administrator* in the orderly transfer of the loss control and claim functions, including providing a runoff listing of *open claim files* if the same is desired by MORMA, and any other records reasonable and necessary for a *successor administrator*; and

d. Provide tape-to-tape transfer of data if such is feasible, with the cost of providing such to be borne by MORMA.

\* \* \*

6. (a) This agreement shall be for a term of two years beginning on January 1, 1993, and terminating on December 31, 1994. MORMA shall pay to CRMC as a service fee, the sum of $336,000. per year, a total of $672,000., payable monthly at the rate of $28,000. per month for twenty-four months. In addition, CRMC will be entitled to fifty percent (50%) of the commissions payable for placement of the Excess/Aggregate coverages for MORMA." (Emphasis added.)

Paragraph 10 states:

"10. The terms and conditions contained herein constitute the *entire agreement* between the parties and supersede any previous communications, representations or agreements, either oral or written, with respect to the subject matter hereof." (Emphasis added.)

■ When the explicit termination provision and compensation clause contained in paragraph 6(a) of the contract are construed together with CoreSource's contractual obligation to immediately turn over "all active" and "open" claim files to MORMA or a successor administrator upon expiration of the contract, as set forth in paragraph 4, it is clear that the parties agreed to a two-year contract that terminated on December 31, 1994. MORMA's interpretation of the Agreement, paragraph 2(a) in particular, that CoreSource had a continuing obligation to continue to process claims beyond the date of termination is unreasonable, since paragraph 2 simply identifies the administrative services CoreSource agreed to perform under the Agreement and the claims for which those services were to be rendered, but does not require CoreSource "to handle claims to conclusion" as MORMA contends. Indeed, the clause is silent as to how long CoreSource will perform claims administration services; instead, it identifies the claims that CoreSource agreed to service, that is, those "which occur during the period of this Agreement."

If the parties were to have agreed that CoreSource would continue

to handle claims beyond the expiration of the contract without further payment, that term should have been expressly stated in the Agreement. Such a substantial obligation, intended to survive the specified termination date of the contract, should have been contained in explicit language. The parties would not have expressed their intent to impose such a substantial duty through use of the single word, "occur," which was buried in one paragraph of section 2(a), at the same time specifically stating that the Agreement providing the service was to terminate on December 31, 1994. Furthermore, MORMA's interpretation flies in the face of CoreSource's contractual obligation to turn over all "active" claim files upon termination and to cooperate in the orderly transition to a new administrator upon contract expiration. If the parties had so intended, the more significant continuing duty of processing claims to their conclusion also would have been incorporated into the contract. Lastly, if the parties had intended CoreSource to continue handling existing claims beyond the termination date, the Agreement would not have prevented CoreSource from doing so by requiring it to transfer to the new administrator upon contract expiration the claims materials upon which their continuing administration depended.

MORMA's attempt to buttress its interpretation of the Agreement by comparing the contract to an occurrence-based insurance policy is equally fallacious; the parties did not enter into an insurance contract, but an agreement to provide services for a fee. CoreSource was not an insurer, and MORMA did not pay premiums for CoreSource to cover a risk. Rather, CoreSource agreed to administer claims for an identified period of time in exchange for an amount of money.

When the explicit termination provisions and compensation clause contained in paragraph 6(a) of the contract are construed together with CoreSource's duty to immediately turn over active claim files to MORMA or a successor administrator upon expiration of the contract, the intent of the parties is clear; all CoreSource's duties under the contract terminated as of December 31, 1994. The circuit court correctly so concluded; no ambiguity exists as a matter of law. Accordingly, the summary judgment in favor of CoreSource on count I of MORMA's complaint was proper.

## II

MORMA next contends that summary judgment should have been entered in its favor on the breach of May Agreement count (count II) of its complaint, where it alleges that agreement plainly requires CoreSource to handle to conclusion all open claims that occurred from 1990 through 1992.

The May Agreement does not alter the existing Agreement, other than to add, for the duration of the contract, an additional set of claims to be administered in exchange for an additional payment. The letter of May 26, 1993, represented a written expression of the parties' intent to include additional contractual elements to the underlying Agreement; as such, the May Agreement is subject to the same conditions and provisions of the Agreement, including the termination date of December 31, 1994. Accordingly, CoreSource's obligations under the May Agreement ended with the expiration of the Agreement. The fact that the May Agreement does not expressly reference the Agreement does not alter this interpretation, where the May Agreement could not exist without the Agreement.

## III

In the alternative, MORMA contends that this court should consider whether conflicting terms of the Agreement give rise to an ambiguity, barring the award of summary judgment to either party. In this regard, MORMA asserts that: (1) a court may provisionally consider extrinsic evidence to determine as a matter of law whether the meaning of a contract's terms are ambiguous or clear on their face; (2) potentially conflicting terms of the contract give this court the authority to consider, provisionally, parol evidence in order to determine whether the terms used in the Agreement accurately reflect the intent of the parties at the time of contracting or, in the alternative, whether they are ambiguous; (3) parol evidence, including Core-Source's own proposals, the course of dealing between the parties, and trade usage demonstrate that CoreSource is required to handle to conclusion all claims that occurred during the period of the agreement; and (4) this court must either determine that the terms of the contract require CoreSource to handle all claims to completion or, in the alternative, find the terms of the agreement ambiguous.

Whether a contract is ambiguous is a question of law to be decided by the court, from an examination of the instrument as a whole without first considering extrinsic evidence. *Hillenbrand v. Meyer Medical Group, S.C.*, 288 Ill. App. 3d 871, 875-76, 682 N.E.2d 101 (1997). The circuit court in the case *sub judice* did not abuse its discretion when it looked to the four corners of the subject contract before considering parol evidence, particularly where, as here, the Agreement contains a merger provision, paragraph 10, which precludes the introduction of extrinsic evidence. Nor did CoreSource "open the door" to discovery by attaching its executive's affidavit; the record shows that the court did not refer to or rely upon anything but the terms of the contract in coming to its conclusion.

In sum, the circuit court correctly found that CoreSource did not breach the Agreement as a matter of law, when it refused to continue handling claims beyond December 31, 1994, the contract's expiration date, and that under the CoreSource counterclaim, MORMA owes CoreSource the unpaid sum of $23,833.33, the final monthly payment under the Agreement, plus costs and interest accrued at the statutory rate. For these reasons we conclude that summary judgment in favor of CoreSource was properly entered and must be affirmed.

Affirmed.

HOURIHANE, P.J., and GREIMAN, J., concur.