In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3681

Tina R. Thomas, O.D.,

Plaintiff-Appellant,

v.

Pearle Vision, Inc.,

Defendant-Appellee.

Appeal from the United States District Court
for the Central District of Illinois.
No. 97-1441--Joe B. McDade, Chief Judge.

Argued April 10, 2001--Decided May 30, 2001


   Before Coffey, Rovner, and Diane P. Wood,
Circuit Judges.

   Coffey, Circuit Judge.  When Pearle
Vision, Inc. ("Pearle") refused to
restore Dr. Tina Thomas to the
optometrist position in its Peoria,
Illinois, store after a medical leave
related to the birth of her child, she
sued Pearle, alleging that Pearle had
breached her employment contract. Thomas
claimed that Pearle's 1997 Summary Plan
Description of employee benefits
incorporated into her contract the Family
Medical Leave Act of 1993, 29 U.S.C. sec.
2601, et seq. Thomas also claimed Pearle
violated the FMLA by failing to provide
her with written notice that it
considered her a highly compensated
employee and that it intended to deny her
job restoration upon the completion of
her leave. The district court granted
summary judgment to her employer, Pearle,
holding that the "Problem Resolution"
clause within the manual afforded Dr.
Thomas an exclusive remedy for Pearle's
failure to comply with the FMLA and
therefore, Dr. Thomas's failure to comply
with that clause defeated her claim. Dr.
Thomas appeals.

I.  Factual Background

   Dr. Thomas began working at Pearle in
September 1994 as a full-time doctor in

its Peoria, Illinois store. Pearle employed only 12 employees at the Peoria store and less than 50 employees within 75 miles of the Peoria store. In 1996, however, Pearle distributed to all of its employees a 1997 Summary Plan Description of Employee Benefits ("1997 SPD"). In a section entitled, "The Family and Medical Leave Act of 1993," Pearle stated in the 1997 SPD that "all employees with one year of service who worked 1,250 hours with Pearle in the 12 months immediately prior to requesting leave" were eligible for leave under the FMLA. The 1997 SPD repeated this eligibility description clause later, stating "[i]f you have worked for Pearle for at least one year, and have worked 1,250 hours or more during the 12 month period prior to requesting leave, you are eligible for Family and Medical leave." The handbook further contained instructions on how to request leave, which required employees requesting leave to notify a supervisor at least 30 days in advance and complete the necessary FMLA forms. Additionally, the 1997 SPD contained a section entitled, "Problem Resolution." In that section, Pearle advised its employees that:

It is the policy of the organization not to discharge or discriminate against any employee exercising his or her rights under the federal Family and Medical Leave Act. If you think you have been treated unfairly, please contact the Vice President of Human Resources. The decision of the Vice President of Human Resources will be final and binding.

In September 1996 while expecting the birth of her first child, Dr. Thomas read over the potential benefits listed in the 1997 SPD to determine which one's she might be eligible for, paying particular attention to potential benefits pursuant to the FMLA. Around February of 1997, Dr. Thomas notified her manager of her pregnancy and requested maternity leave under the FMLA. Dr. Thomas's manager furnished her with an FMLA checklist and other forms that had to be completed pursuant to the FMLA. On the FMLA request form, Dr. Thomas noted that she sought only eight weeks of leave (though the FMLA and Pearle's plan allowed for up to twelve weeks of leave). Further, on the form for physician certification, which she completed before the birth of her

child, Dr. Thomas and her physician answered in the affirmative that she was 1) able to perform work of any kind, and 2) able to perform the functions of her position.

Shortly after completing the forms, Dr. Thomas expressed a concern to Pearle regional manager, Cheryl Melquist, dealing with her eligibility because of the section in the 1997 SPD labeled "Job Restoration." In that section, Pearle noted that "[c]ertain highly compensated salaried employees are eligible for leave, but are not guaranteed restoration to their position if they choose to take leave."/1 Melquist advised Dr. Thomas that Pearle "would do everything [it] could to help, to get fill-in doctors for [her]" and that "as long as [it could] find fill-in help, [Thomas] would havenothing to worry about." Melquist also told Thomas to call Pearle's human resources manager, Tim Hying, if she had any questions. Admittedly, both Melquist and Hying also told Thomas that there may not be a position for her when she returned, seemingly contradicting her earlier statement that Thomas had nothing to worry about. But neither Melquist nor Hying ever sent Thomas written notice to that effect or indicated definitively that she would not be offered job restoration upon completion of her leave.

Shortly before Thomas's leave commenced, Pearle hired several doctors to serve part-time (both to cover Thomas's absences before the delivery, and her leave after delivery). On April 24, Dr. Don Nelson told Thomas that he was going to fill in for her while she was on leave. Thomas's manager, Traci Soots, confirmed that Dr. Nelson was temporary help. Thomas commenced her leave on April 29, several weeks earlier than she expected, because of a back problem asso ciated with her pregnancy. The next day, Thomas sent a letter via facsimile to Melquist, informing her that she still planned to take pregnancy leave and inquiring about what was planned for the future regarding her position and about Dr. Nelson's status. On May 5, 1997, Melquist phoned Thomas and explained that Dr. Nelson was temporary help. But the following day, Hying instructed Melquist to hire a full-time regular employee doctor, and Dr. Nelson was hired shortly thereafter. Pearle did not notify Dr.

Thomas at this time of its decision to hire Dr. Nelson full-time. In fact, Pearle never did notify Dr. Thomas in writing that they were unable to continue using temporary help to fill her position during her absence or much less that she would be denied job restoration upon her return from pregnancy leave.

Instead, sometime around July 1997 Dr. Thomas learned that Pearle had hired a full-time replacement for her when she noticed that her name was not on her office door. On July 24, 1997, regional manager Kurt Schaefer (who had recently replaced Melquist) informed Dr. Thomas (still, not in writing, but via a message left on her home telephone's answering machine) that Pearle had hired Dr. Nelson as a full-time doctor and that there were currently no part-time or full-time positions available in the region. Schaefer did not explain that restoring Dr. Thomas to her position (or a similar one) would result in substantial and grievous economic injury to Pearle (thus necessitating the hire of Dr. Nelson). Dr. Thomas then commenced suit against Pearle for breach of contract, alleging that Pearle incorporated the FMLA into her contract through the 1997 SPD. Dr. Thomas further claimed that Pearle breached the contract when it failed to comply with the provision of the FMLA that an employer give highly compensated employees written notice at the time leave was requested that it intended to deny job restoration on the completion of leave. See 29 C.F.R. sec. 825.219.

Pearle moved for summary judgment, arguing that the 1997 SPD did not create an enforceable contract granting Dr. Thomas any rights under the FMLA, and in the alternative, that Dr. Thomas breached the contract by failing to take advantage of the "Problem Resolution" clause in the 1997 SPD. The trial court rejected defendant's first argument, holding that the 1997 SPD met the requirements of Duldulao v. Saint Mary of Nazareth Hosp. Ctr., 505 N.E.2d 314, 317-18 (Ill. 1987), and created an enforceable contract that gave Dr. Thomas the benefits of the FMLA. Nonetheless, the district court granted summary judgment to Pearle, holding that Dr. Thomas had not complied with the "Problem Resolution" procedure and therefore her breach of contract defeated her claim.

Dr. Thomas filed a motion to reconsider the judgment and also for leave to supplement the record (to show that she had complied with the clause). In her motion, Dr. Thomas argued that Pearle had breached the contract first, and therefore her breach was immaterial. The court granted Dr. Thomas's motion and vacated its initial order. The court further declared Dr. Thomas's motion to supplement the record as moot. After the district court vacated the judgment, Pearle filed a motion to reconsider, arguing that the court's holding rendered the "Problem Resolution" clause meaningless. The court agreed and again granted summary judgment to Pearle. The court reasoned that, although the 1997 SPD granted Dr. Thomas rights under the FMLA, it also limited those rights through the Problem Resolution clause, which operated as an exclusive remedy for violations of FMLA benefits given to Dr. Thomas by the 1997 SPD. Dr. Thomas appeals, arguing that the Problem Resolution clause is ambiguous in that it can reasonably be interpreted as either permissible or mandatory and in that it does not apply to her as published.

## II.  Issues

Two issues present themselves in Dr. Thomas's appeal. Initially, we must determine whether the 1997 SPD created an enforceable contract that granted Dr. Thomas the benefits of the FMLA. Next, if we determine that the 1997 SPD did create an enforceable contract, we must determine whether the Problem Resolution clause was ambiguous.

## III.  Analysis

We review de novo a district court's grant of summary judgment. Kuchenruether v. City of Milwaukee, 221 F.3d 967, 972 (7th Cir. 2000). Summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Illinois law a genuine issue of material fact exists in contract cases when a key provision of a contract is ambiguous, requiring admission of extrinsic evidence. McDonald's Operators Risk Mgmt. Ass'n, Inc. v. CoreSource, Inc., 717 N.E.2d 485, 488; Dudek, Inc. v.

Shred Pax Corp., 626 N.E.2d 1204, 1209 (Ill. App. Ct. 1993); Dash Messenger Serv., Inc. v. Hartford Ins. Co., 582 N.E.2d 1257, 1260 (1991). Moreover, once the trial court has interpreted the contract as a matter of law, the reviewing court may independently construe the contract. In re Marriage of Davis, 678 N.E.2d 68, 70 (Ill. App. Ct. 1997); Omnitrus Merging Corp. v. Illinois Tool Works, Inc., 628 N.E.2d 1165, 1168 (Ill. App. Ct. 1994).

A. Existence of a Contract and FMLA Benefits

Because Pearle employed less than 50 employees within 75 miles of the store at which Dr. Thomas worked, she would not be an eligible employee as defined by the FMLA. See 29 U.S.C. sec. 2611(2)(B). Thus, Dr. Thomas's claim arises not under the FMLA, but under the language of her contract. Dr. Thomas contends that the 1997 SPD that Pearle distributed to all of its employees, and language therein created an enforceable contract granting her rights under the FMLA. Under Illinois law, employee manuals can create enforceable contracts if the traditional elements of contract formation are present. See Duldulao, 505 N.E.2d at 318; Perma v. Arcventures, Inc., 554 N.E.2d 982, 987 (Ill. App. Ct. 1990).

To support her contention that Pearle made an express promise to grant her benefits under the FMLA, Dr. Thomas points to a passage in the 1997 SPD that reads:

If you have worked for Pearle for at least one year, and have worked 1,250 hours or more during the 12 month period prior to requesting leave, you are eligible for Family and Medical Leave.

Dr. Thomas argues that this language, repeated elsewhere in the 1997 SPD, serves to waive the jurisdictional threshold mandating a minimum number of employees be employed within a certain radius for an employee to be eligible for the FMLA. In essence, Dr. Thomas contends that this language expressly incorporates the FMLA, in its entirety, into her contract.

Pearle contends on appeal, as it did below, that the 1997 SPD does not create

an enforceable contract because the statement discussing FMLA eligibility is not an express promise that it "incorporates, adopts, abides by, or provides to all its employees the full array of FMLA rights." But it is hard to construe the statement in the 1997 SPD that "all employees with one year of service who worked 1,250 hours with Pearle in the 12 months immediately prior to requesting leave" are eligible for the FMLA as anything other than an express promise. Cf. Lee v. Canuteson, 573 N.E.2d 318, 322 (Ill. App. Ct. 1991) (holding that employee manual that stated "it is the sincere intent of [employer] to be fair and reasonable with all employees at all times" and that employees "may" be subject to progressive discipline did not constitute express promises). Had Pearle wished to limit this clause, it needed only omit the "all" and replace it with "any employee who is employed at a work site with less than 50 employees." Similarly, had Pearle intended the section on the FMLA to merely describe FMLA benefits for those employees who were eligible it could have drafted the clause accordingly. It did neither.

The above is not the only evidence in the record that Pearle obligated itself to provide Dr. Thomas (and other employees not otherwise statutorily eligible) the benefits of the FMLA. Pearle's actions provide further evidence of their intent to provide Dr. Thomas with FMLA benefits. The 1997 SPD established a procedure for employees to follow when requesting leave under the FMLA, and pursuant to this procedure Pearle provided Dr. Thomas with FMLA forms to complete. In short, Pearle acted as if the 1997 SPD did, in fact, grant Dr. Thomas the right to request leave under the FMLA, despite the fact that at this point in time she was not statutorily eligible. Dr. Thomas's reliance on Pearle's actions was reasonable, and Pearle's argument that the 1997 SPD did not offer Dr. Thomas the benefits of the FMLA is disingenuous at best.

B.  Interpretation of the Problem Resolution Clause

Although we hold that the 1997 SPD did create an enforceable contract that rendered Dr. Thomas eligible for the

FMLA, this alone does not carry the day for Dr. Thomas. This is because of the simple principle that what a contract gives, it can also take away. Pearle argues that, even if the 1997 SPD did make Dr. Thomas eligible for benefits under the FMLA, other parts of the 1997 SPD took away certain benefits. Principally, Pearle contends that the Problem Resolution clause/2 serves either as an exclusive remedy for any violations of the FMLA or as a requirement that must be exhausted before an aggrieved employee may bring suit. Thus, Pearle argues that Dr. Thomas's claim for breach of contract is barred because Dr. Thomas failed to follow the procedure set forth in the Problem Resolution clause. Dr. Thomas suggests, however, that the Problem Resolution clause is ambiguous, pointing to two ambiguities: 1) whether it is mandatory or permissive; 2) whether it applies to any claim under the FMLA or only claims of retaliation or discrimination for exercising FMLA rights.

A contract is ambiguous if it is reasonably or fairly susceptible to more than one interpretation. Owens v. McDermott, Will & Emery, 736 N.E.2d 145, 150 (Ill. App. Ct. 2000); Pennsylvania Life Ins. Co. v. Pavlick, 637 N.E.2d 1160, 1162 (Ill. App. Ct. 1994); Omnitrus Merging Corp., 628 N.E.2d at 1168. However, merely because the parties do not agree on the contract's meaning does not render it ambiguous. Pennsylvania Life Ins. Co., 637 N.E.2d at 1102. Thus, we must determine whether Dr. Thomas's interpretations of the Problem Resolution clause are reasonable, bearing in mind that Illinois has long recognized the rule of contract construction that any ambiguity in the contract should be resolved against the drafting party, in this case Pearle. See Liccardi v. Stolt Terminals (Chicago), Inc., 669 N.E.2d 1192, 1199 (Ill. App. Ct. 1996); Wheeler v. Phoenix Co. of Chicago, 658 N.E.2d 532, 537 (Ill. App. Ct. 1995) (ambiguities in language contained within employee manual construed against the drafter); Epstein v. Yode 391 N.E.2d 432 (Ill. App. Ct. 1979).

1. Mandatory or Permissive

We note at the outset that the plain language of the contract is permissive,

not mandatory. See Owens, 736 N.E.2d at 150 (holding that a party's intent is best determined from the plain language of the contract). The clause reads, "[i]f you think you have been treated unfairly, please contact the Sr. Vice President of Human resources." It does not read, "you must contact the Sr. Vice President" or "failure to contact the Sr. Vice President will result in a loss of your rights and benefits." If Pearle had wished the Problem Resolution clause to be an exclusive and mandatory remedy that must be exhausted before a complainant resorts to litigation, then it could very easily have drafted the clause with clear, unambiguous, and express mandatory language. Cf. Lee v. Canuteson, 573 N.E.2d 318, 320 (1991) ("failure to comply with any of the time limits listed below shall constitute a waiver of the grievance."). Even though the district court's interpretation could perhaps be deemed reasonable, so too is an interpretation that the Problem Resolution clause merely offered Pearle employees the additional benefit of an informal resolution procedure.

Pearle suggests that to interpret the clause as permissive eviscerates its meaning, and deprives Pearle of a bargained for right, citing Mayfair v. Waveland, 619 N.E.2d 144, 152 (Ill. App. Ct. 1993) (contracts should be construed to give effect to every clause). We disagree. Pearle may have intended the Problem Resolution clause to grant employees additional rights, giving them an informal remedy should they chose to avoid retaining an attorney. This could both generate good will among Pearle employees (who may not have to struggle as mightily to validate their FMLA rights when management makes an honest mistake), but also, in turn, helps Pearle avoid legal expenses when those employees choose that remedy. Pearle's suggestion that employees would never avail themselves of a permissive remedy and would instead always resort to litigation is but speculation.

But there is more to cast doubt on Pearle's interpretation of the Problem Resolution clause. The FMLA prohibitscovered employers from discouraging eligible employees from exercising their rights under the FMLA, see 29 C.F.R. sec. 825.220(a)(1), and

Pearle distributed the 1997 SPD to all of its employees, including those statutorily eligible for protection under the FMLA. Accordingly, if the Problem Resolution clause is obligatory, then it arguably violates the FMLA and would be entirely invalid against its FMLA-eligible employees. Pearle suggests that every contract should be read so that every clause is given effect, but the very interpretation of the contract that it proposes would strip the Problem Resolution clause of meaning for many Pearle employees./3

Because the express language of the Problem Resolution clause is permissive and because an interpretation of the clause as such is reasonable, we hold that the Problem Resolution clause is ambiguous. Therefore, there is a genuine issue of material fact as to whether Pearle intended the procedure set forth in the Problem Resolution clause to be permissive or mandatory.

2.  The Scope of the Problem Resolution Clause

Even if, however, the Problem Resolution clause clearly expressed Pearle's intent to create an obligatory remedy that aggrieved employees must utilize before resorting to litigation, Dr. Thomas further argues that the Problem Resolution clause is ambiguous as to its scope. Dr. Thomas contends that the clause applies only if an employee seeks to bring a claim of retaliation for exercising rights under the FMLA. She points to language in the clause that reads "[i]t is the policy of the organization not to discharge or discriminate against any employee exercising his or her rights under the Family and Medical Leave Act." Pearle largely ignores this argument, relegating its response to a footnote in which it claims that Thomas's reading of the clause is "tortured" and "facially unavailing."

But an examination of the structure of the FMLA suggests that Dr. Thomas's reading of the Problem Resolution clause is, in fact, reasonable. The FMLA establishes two categories of broad protections for employees--one prescriptive in nature, the other proscriptive. See 29 U.S.C. sec. 2615

(a)(1) & (2); see also Rice v. Sunrise Express, 209 F.3d 1008, 1016-17 (7th Cir. 2000); King v. Preferred Technical Group, 166 F.3d 887 (7th Cir. 1999); Strickland v. Water Works and Sewer Bd. of the City of Birmingham, 239 F.3d 119, 1206-07 (11th Cir. 2001); Chaffin v. John H. Carter Co., 179 F.3d 316, 319 (5th Cir. 1999); Hodgens v. General Dynamics Corp., 144 F.3d 151, 159-60 (1st Cir. 1998). The prescriptive category of protections ensures the availability of the FMLA's substantive statutory rights, making it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided." See 29 U.S.C. sec. 2615(a)(1); see also King, 166 F.3d at 891; Strickland, 239 F.3d 1206-07. The proscriptive category of protections does not ensure substantive rights, but instead, protects employees from retaliation, making it unlawful for employers to discriminate against employees who have exercised their rights under the FMLA. See 29 U.S.C. sec. 2615 (a)(2); 29 C.F.R. sec.825.220(c); see also King, 166 F.3d at 891; Strickland, 239 F.3d at 1206-07. Courts have routinely recognized the difference between the two types of claims, and have applied different tests when employees bring only one of the two types of claims. See, e.g., Diaz v. Fort Wayne Foundry Corp., 131 F.3d 711 (7th Cir. 1997); Nero v. Industrial Molding Corp., 167 F.3d 921 (5th Cir. 1999); Chaffin, 179 F.3d at 319. In this case, language of the Problem Resolution clause suggests that it applies to proscriptive claims of retaliation and discrimination and not to prescriptive claims that Pearle failed to provide substantive FMLA rights. It directs employees who believe they have been discriminated against for exercising their rights under the FMLA (and not those employees who believe they have unlawfully been denied FMLA benefits) to contact the Sr. Vice President. Further, the second paragraph of the clause directs employees who have "questions" about their FMLA benefits to contact their benefits coordinator./4 A reasonable interpretation of the entire clause, which differs from that offered by Pearle, is that employees who have questions about substantive FMLA benefits (such as Dr. Thomas) contact their benefits coordinator, while employees who believe that they have been retaliated

against for exercising FMLA rights (a category in which Dr. Thomas would not be included) contact the Sr. Vice President. Accordingly, we hold that the Problem Resolution clause is also ambiguous as to its scope. Therefore, there is a genuine issue of material fact as to whether the procedure set forth in the Problem Resolution clause applies to Dr. Thomas.

## C. Form over Function

Lest we elevate form over substance, we discuss briefly whether Dr. Thomas was actually damaged by Pearle's failure to provide her written notice that she was a highly compensated employee and that it intended to deny job restoration. The parties do not dispute that both Melquist and Hying told Thomas that there may not be a position for her when she returned. But Melquist, Soots, and even Dr. Nelson himself, told Thomas on numerous occasions, 4 in number, that she had "nothing to worry about" and that Dr. Nelson was only temporary help. Indeed, on the day before Melquist hired Dr. Nelson, she advised Thomas that Dr. Nelson was only performing her duties as "temporary help." Thus, Pearle's actions should not be considered so clear to a reasonable individual, including Dr. Thomas, that it considered her to be a highly compensated employee and would not necessarily offer her job restoration when she returned from leave. They are, in fact, far from it.

And there is more. At the same time Pearle employees told Thomas that she might not be offered job restoration, they provided her with FMLA forms to complete, which could have lead a reasonable person to believe that her position was secure and her leave had been granted. On those leave request forms, Dr. Thomas also indicated that she was able and willing to perform the functions of her position--and yet Pearle never informed her that it planned to hire Dr. Nelson full-time because they could not find sufficient coverage for Dr. Thomas's position. Indeed, Thomas did not even learn that Pearle had hired a full-time replacement until she began preparing and was physically able to return from her leave in July and noticed that her name was no longer on the office door.

In essence Pearle never did provide Dr. Thomas with a clear and definite statement of its intentions. Perhaps, if faced with the decision between two definite alternatives--either to continue her leave knowing that her job would not be restored or to abort her leave to secure her position--Dr. Thomas would have chosen the latter, and that is sufficient to establish that Pearle's failure to provide her written notice was certainly far more important than a simple, technical error, but one that substantively affected Dr. Thomas's rights.

IV.  Conclusion

We disagree with the district court's conclusion that the Problem Resolution clause in Pearle's 1997 SPD unambiguously created an exclusive remedy for Pearle's breach of the FMLA. The clause neither used express language indicating such an intent, nor clearly defined the scope of the clause. Further, we hold that Dr. Thomas was injured by Pearle's failure to provide clear, written notice of its intention not to offer her job restoration, with which she might have chosen to continue working rather than risk the loss of her job. Accordingly, because the contract is ambiguous, its interpretation is a question for the trier of fact and summary judgment was improper.

The decision of the district court is REVERSED and the case REMANDED for further proceedings consistent with this opinion.

FOOTNOTES

/1 This clause is similar to an exemption in the FMLA, allowing employers under certain conditions to deny restoration to highly compensated employees. 29 U.S.C. sec. 2614(b)(1). The regulations implementing the FMLA require an employer that chooses to avail itself of this exemption to provide the employee written notice at the time the employee requests leave that it intends to deny restoration pursuant to sec. 2614. If the employer does not provide written notice to the employee, then it loses its right to deny restoration. 29 C.F.R. sec. 825.219.

/2 The Problem Resolution clause reads, in its entirety:

It is the policy of the organization not to discharge or discriminate against any employee

exercising his or her rights under the federal Family and Medical Leave Act. If you think you have been treated unfairly, please contact the Sr. Vice President of Human Resources. The decision of the Sr. Vice President of Human Resources will be final and binding.

If you have questions about the Family and Medical Leave Act of 1993, please contact your Benefits Coordinator.

/3 The record does not disclose how many Pearle employees are eligible employees as defined by the FMLA, but presumably all of those employees in major metropolitan areas (where it is likely that more than 50 employees work within a 75 mile radius) are eligible.

/4 Although the record does not disclose who Thomas's benefits coordinator was, she had contact with both Pearle's regional manager, Melquist, and Pearle's human resources manager, Hying, regarding her leave.